John STELLING, Forrest Darby, Robert McDaniel, and Terry C. Hix, Plaintiffs-Appellants,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NUMBER 1547, and the International Brotherhood of Electrical Workers, I. M. Waldrop, Jr., W. L. Vinson, Charles H. Pillard, and Wesley I. Taylor, Defendants-Appellees.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO (I.B.E.W.) Third Party Plaintiff-Appellee,

v.

ALASKA CHAPTERS, NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, Third Party Defendant.

No. 77–3517.

United States Court of Appeals, Ninth Circuit.

Dec. 21, 1978.

Edmond J. Rice and Irene F. Jackson, Anchorage, Alaska, for plaintiffs-appellants.

Hugh Hafer, Seattle, Wash., for defendants-appellees.

Before WRIGHT, KENNEDY and TANG, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Appellants, individual members of Alaskan Local 1547 of the International Brotherhood of Electrical Workers (IBEW or International) appeal from the district court's order[1] dismissing their claims for injunctive and declaratory relief under § 301 of the Labor-Management Relations Act (LMRA) and §§ 101, 102, 105, 501 and 609 of the Labor-Management Reporting and Disclosure Act (LMRDA). The district court found jurisdiction for the appellants' claim for declaratory relief under § 501 of the LMRDA, and granted summary judgment as a matter of law to the appellees.[2]

Appellants' primary assertion is that the appellees violated the IBEW constitution in failing to submit the International Construction Agreement (ICA), a bargaining agreement, to the union membership for a ratification vote. The ICA was entered into with the National Electrical Contractors Association (NECA), a nationwide organization of employers. It increased pension contributions from employers to the National Electrical Benefits Fund, a nation-wide pension plan for the benefit of union members, from 1% to 3%. It also contained provisions affecting management rights, shift work, and apprentice ratios.

Appellants sought a declaratory judgment determining the respective rights and duties of the parties under the IBEW constitution and declaring that the appellees had violated the constitution by failing properly to secure the membership's consent to the ICA. They sought to enjoin the appellees or their agents from taking any action to implement the ICA until local union consent had been obtained, together with an order directing the Department of Labor to conduct referenda among the affected members of the IBEW to determine whether they wished to be subject to the provisions of the ICA dealing with nonpension matters.[3]

Finally, they sought a stay in the enforcement of the disciplinary actions against appellants Darby and McDaniels and an order directing the appellees to inform the union members of their rights under the LMRDA.

FACTS:

In 1946, the IBEW and NECA entered into a national pension plan agreement for the benefit of union members. Starting in 1962 and continuing until 1974, resolutions passed at international IBEW conventions directed the international officers to negotiate a new pension plan with increased benefits. Following the 1974 convention, Pillard, president of the IBEW, negotiated with NECA and reached the agreement memorialized in the ICA.

Local unions were notified of the new agreement by letter in December 1976. The business managers of each were directed to incorporate the ICA terms into local

---

1. Reported in 438 F.Supp. 856 (D.Alaska 1977).

2. Appellees are the Local Union; the IBEW; I. M. Waldrop, Jr., Business Manager and Financial Secretary of the Local Union; W. L. Vinson, International Vice President for the IBEW's Ninth District (covering Alaska); Charles H. Pillard, International President of the IBEW; and Wesley I. Taylor, Chairman of the Executive Board of the International.

3. Appellants further requested that appellee Waldrop, business manager of the local union, join the local union as a plaintiff in order to protect the union rights and that he be required to notify the International that he wished to remove his signature from the agreement because it was not duly authorized.

collective bargaining agreements. The effective date of the ICA was July 1, 1977, and it is apparently still in effect. All but one of the 374 affected IBEW construction locals approved the ICA, but it has never been submitted to the membership for a vote.

At a series of meetings at the end of 1976 and beginning of 1977, Local 1547 members voted on the agreement. The membership rejected it, and individual members, including appellant Stelling, wrote to the international president requesting rescission of the instructions to local business managers on the ground that the IBEW constitution required a vote before the ICA could be executed. Appellant Waldrop also informed the international of the members' disapproval. Nevertheless, under direction from the international president, Waldrop signed an agreement with the Alaska Chapter of NECA, incorporating the provisions of the ICA.

Darby and Hix asked unsuccessfully that the officers of Local 1547 sue the international to require a ratification vote by the membership. Darby and McDaniel continued to oppose the ICA at local union meetings and on and off the job. Disciplinary proceedings were filed against them by the local union's officers. McDaniel was convicted after a hearing, and Darby's record was remanded to the apprenticeship committee for review. Both men appealed and in August 1977, officers of the international dismissed charges against both.

Appellants filed suit on March 28, 1977. Their request for preliminary injunction was denied and they then moved for summary judgment. The district court found (1) no jurisdiction over the appellants' claims under § 301 of the LMRA because the section did not permit suits by individual union members against their union; (2) no jurisdiction under § 101 of the LMRDA because no discrimination in voting rights had been alleged; and (3) no jurisdiction over the claims for injunctive relief under § 501 of the LMRDA because the appellants had failed to and could not join an indispensable party.

The court further determined that the disciplinary claims were moot because the international president had dismissed them and the claim brought under § 105 of the LMRDA was dismissible for failure to exhaust intra-union remedies. The court found jurisdiction under § 501 for appellants' claims for declaratory relief, but granted summary judgment for appellees because the union's interpretation of the constitution was reasonable.

I.

SECTION 301

■ Section 301 of the LMRA, 29 U.S.C. § 185 provides:

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Appellants assert that jurisdiction exists under this section because the IBEW constitution is a contract for the purposes of section 301, and the alleged breach of the "contract" affected collective bargaining and labor-management relations. The district court concluded there was no jurisdiction under the section because it does not confer jurisdiction in suits by members against their local or international union for breaches of the union constitution. While we agree with the result, the district court's reasoning appears faulty in light of recent decisions in this circuit and the Supreme Court.

The right of individual employees to sue under § 301 to vindicate their "uniquely personal" rights under a collective bargaining agreement has specifically been recognized in a series of cases. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 511 (9th Cir. 1978); *Beriault v. Local 40,*

*SuperCargoes and Checkers of the ILWU,* 501 F.2d 258, 261 (9th Cir. 1974). *See also Motor Coach Employees v. Lockridge,* 403 U.S. 274, 299, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971). As we recognized in *Rehmar v. Smith,* 555 F.2d 1362, 1366 (9th Cir. 1976), jurisdiction depends on the nature of the action rather than the status of the parties. The mere fact that the action here is brought by individual union members does not preclude jurisdiction.

■ Our next inquiry is whether the courts have found actions based on union constitutions cognizable under § 301. In *Smith v. Evening News Association,* 371 U.S. 195, 200, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), the Supreme Court rejected the contention that the "between" in this section refers to "suits" rather than "contracts" and held that an individual union member could sue his employer for breach of a collective bargaining agreement. In *Retail Clerks International Association v. Lion Dry Goods, Inc.,* 369 U.S. 17, 28, 82 S.Ct. 541, 548, 7 L.Ed.2d 503 (1962), the Court held that § 301 is not restricted in application to suits involving collective bargaining agreements, but applies also to suits based on other types of contracts "significant to the maintenance of labor peace."

Several courts have permitted actions under § 301 based on asserted violations of a union constitution. However, in each case where a constitution has provided the basis for jurisdiction, the court has specifically found that the controversy had either "traumatic industrial and economic repercussions," *Parks v. International Brotherhood of Electrical Workers,* 314 F.2d 886, 916 (4th Cir.), *cert. denied,* 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963) (action by local against international for rescission of local's charter), or significantly affected labor-management relations, as where the dispute affected the representation of workers in collective bargaining. *Local Union 1219, United Brotherhood of Carpenters v. United Brotherhood of Carpenters,* 493 F.2d 93, 96 (1st Cir. 1974); *Local Union No. 657 of United Brotherhood of Carpenters v. Sidell,* 552 F.2d 1250, 1256 (7th Cir.), *cert.*

denied, 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135 (1977). *See Keck v. Employees Independent Association,* 387 F.Supp. 241 (E.D.Pa.1974).

Other courts have ruled that union constitutions do not provide a jurisdictional basis where the underlying controversy was strictly intra-union and unrelated to external labor-management relations. In *1199 DC, National Union of Hospital and Health Care Employees v. Nat'l Union of Hospital and Health Care Employees,* 175 U.S.App. D.C. 70, 533 F.2d 1205 (1976), the union local and individual members sued the parent unions alleging that a merger of locals violated the constitution. The court found no jurisdiction under § 301 because plaintiffs had not asserted any effect on collective bargaining or on relations with employers, therefore the dispute was deemed intra-union. In *Smith v. United Mine Workers,* 493 F.2d 1241 (10th Cir. 1974), union members sued the international contending that the merger of intermediate districts within the union violated the constitution. The 10th Circuit found no jurisdiction because the dispute was strictly intra-union and stated:

> [Section] 301(a) must be liberally applied to promote industrial peace, but that principle has no application here. This controversy relates only to the construction and application of the union constitution and has nothing to do with labor-management relations.

493 F.2d at 1243.

The focus of these cases on the effect of the controversy on external labor relations is consistent with our holding in *Hotel and Restaurant Employees Local 400 v. Svacek,* 431 F.2d 705 (9th Cir. 1970). There, in affirming the district court's dismissal of an action by a local union against a member to collect a fine imposed upon the member for a strike violation, we stated:

> We have been cited to no authority that would permit the union constitution to be used as a contract for jurisdiction under § 301 in an intra-union problem unrelated to a collective bargaining agreement. Nor do we believe that it

was the intent of Congress for the courts to use the Labor Management Relations Act to police intra-union problems.

431 F.2d at 706. Thus, if a controversy is related only to a union dispute which will not affect external labor relations, § 301 does not provide a basis for jurisdiction.

Here, appellants seek to litigate the interpretation of the union constitution. Although they assert that our decision will have a major impact on collective bargaining and labor-management relations, they have stated only "a bald conclusion unsupported by any factual allegation to give it substance." *1199 DC, National Union of Hospital & Health Care Employees,* 175 U.S.App.D.C. at 73 n.1, 533 F.2d at 1208 n.1. The crux of their action is an interpretation of the union constitution.

We cannot agree with appellants that they have alleged sufficient facts to bring this action within the scope of § 301. They have disavowed any intent to challenge the ICA on a substantive basis and have limited their attack to whether the defendants wrongfully denied them the right to vote guaranteed by the IBEW constitution.

The question whether a union constitution grants members the right to vote on the ratification of collective bargaining agreements exemplifies the kind of intra-union issue that does not affect labor-management relations without further specific allegations of such impact. The issue is of an intra-union nature and Congress and the courts have been uniformly reluctant to permit judicial intervention in ongoing internal union affairs.

We hold that there is no jurisdiction under § 301 because the appellants, relying on the union constitution and expressly disclaiming any attack on the agreement itself, have failed to allege a sufficient effect on labor-management relations.

## II.

### SECTION 101

Appellants assert that jurisdiction lies under sections 101(a)(1) and 102 of the LMRDA, 29 U.S.C. §§ 411 and 412. Under § 101(a)(1):

Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

Section 102 permits any person whose rights under § 101 have been violated to sue in district court.

The appellants contend that § 101 guarantees the individual members of a union the right to vote on collective bargaining agreements, and that the district court erroneously held that because all union members were treated equally, no claim under § 101 was stated.

In *Calhoon v. Harvey,* 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), members of a union alleged that provisions of the union's constitution and bylaws infringed on their right to nominate candidates as guaranteed by § 101. The Court concluded that the portion of § 101 relating to nominations "is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote." *Id.* at 139, 85 S.Ct. at 295. The operative factor was whether the complainants had been discriminated against. Appellants contend that § 101 was intended to guarantee the right of union members to vote on collective bargaining agreements; however, in post-*Calhoon* decisions interpreting the sections, courts have looked to whether there was discrimination in the right to vote: "the essence of Title I is the command not to discriminate against members and classes of members in their right to vote and nominate." *Fritsch v. District Council No. 9,* 493 F.2d 1061, 1063 (2d Cir. 1974). *Accord, Smith v. United Mine Workers,* 493 F.2d 1241 (10th Cir. 1974); *Lux v. Blackman,* 546 F.2d 713 (7th Cir. 1976).

■ Jurisdiction under § 101 exists only when such discrimination has been alleged.

*Trail v. International Brotherhood of Teamsters,* 542 F.2d 961 (6th Cir. 1976). *See Parish v. Legion,* 450 F.2d 821 (9th Cir. 1971). Although the LMRDA guarantees members the right to vote in union elections [4] it does not guarantee them the right to vote on a particular question. Its emphasis is on equal voting rights. The Court, in *Calhoon,* recognized that,

> [w]hether the [voting] requirements set by the union's constitution and bylaws were reasonable and valid is a question separate and distinct from whether the right to [vote] on an equal basis given by § 101(a)(1) was violated.

379 U.S. at 139, 85 S.Ct. at 296.

Appellants have asserted no denial of a voting right given to any other member or class of members. The district court properly dismissed the action for failure to state a claim.

## III.

## SECTION 501

Plaintiffs next assert that the court had jurisdiction under § 501 of the LMRDA, 29 U.S.C. § 501. For purposes of analysis, the court first assumed that it had jurisdiction over appellants' claim for injunctive relief under this section and then dismissed the claim. Citing Federal R.Civ.Pro. 19 and *Lomayaktewa v. Hathaway,* 520 F.2d 1324 (9th Cir. 1975), the court found that, after weighing the various salient factors, the failure to join an indispensable party required dismissal. The court then reviewed the appellants' claim for declaratory relief, held that § 501 provided a basis for jurisdiction, but granted summary judgment in favor of appellees.

Preliminarily, we note that we need not consider the problem of indispensable parties because the district court's grant of summary judgment was appropriate not only for the declaratory claims but also for the injunctive claims. Both types of action were grounded on the same facts and required determination of the same issues of law.

██ Section 501 [5] permits action to be taken against any "officer, agent, shop

---

4. The right to vote in union elections is explicitly guaranteed under § 401 of the Act, 29 U.S.C. § 481.

5. The relevant text of the section reads:

   501. Fiduciary responsibility of officers of labor organizations

   Duties of officers; exculpatory provisions and resolutions void

   (a) The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

   Violation of duties; action by member after refusal or failure by labor organization to commence proceedings; jurisdiction; leave of court; counsel fees and expenses

   (b) When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for

steward, or representative of any labor organization."[6]

The question whether § 501 is addressed to the fiduciary duties of officers of a labor organization in all their capacities or only in their functions related to union·financial interests has not been resolved by this circuit. In *Phillips v. Osborne*, 403 F.2d 826 (9th Cir. 1968), we stated that judicial intervention in labor disputes under § 501 was to be carefully undertaken. Citing *Gurton v. Arons*, 339 F.2d 371, 375 (2d Cir. 1964), we noted that at least some courts had limited the language of the section to apply only to financial interests, 403 F.2d at 830. In *Kerr v. Shanks*, 466 F.2d 1271, 1275 n.2 (9th Cir. 1972), where we were not required to examine the scope of the section, we noted that the question remained an open one.[7]

Most courts have taken the "broad view" of Section 501 and interpreted it as establishing the fiduciary duties of labor organization officers in all their functions. Comment, *The Fiduciary Duty Under Section 501 of the LMRDA*, 75 Col.L.Rev. 1189, 1191 (1975); R. T. Clark, *The Fiduciary Duties of Union Officials Under Section 501 of the LMRDA*, 52 Minn.L.Rev. 437, 443 (1967). However, a minority of courts have found that 501 was confined to controversies involving fiduciary responsibilities related only to the "money and property" of the unions. *See, e. g., Gurton v. Arons*, 339 F.2d 371, 375 (2d Cir. 1964).

After reviewing the case law from other circuits and the legislative history of the section, we agree with the district court that § 501 establishes that union officials have fiduciary duties even when no monetary interest of the union is involved.

The first sentence of section 501(a) is a general statement of the fiduciary relationship of union officials to their union and its members. The second sentence lists three duties, each involving the fiscal interest of the union and its membership. In interpreting the section the question is whether the detailing of specific monetarily related duties in the second sentence limits the general application of the section implicit in the first sentence making the section applicable only to questions of fiduciary duties involving financial considerations.

In *Gurton*, 339 F.2d at 375, the court relied on the district court's legislation analysis in *Guarnaccia v. Kenin*, 234 F.Supp. 429, 442 (S.D.N.Y.1964), and found that Congress had intended section 501 to be narrowly construed and applicable only to financially related fiduciary duties.[8] However, in another line of cases, commencing with *Nelson v. Johnson*, 212 F.Supp. 233 (D.Minn.1962), *aff'd sub nom. Johnson v. Nelson*, 325 F.2d 646 (8th Cir. 1963), other courts have extensively reviewed the legislative history and concluded that the section was to be afforded the broader view.

The *Gurton* court discussed only the comments of Senators McClellan and Erwin, sponsors of one of the Senate versions of

good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

6. Section 501 does not provide for suit against a labor organization or an employer. *Pignotti v. Local # 3, Sheet Workers' International Association*, 477 F.2d 825, 832 (8th Cir.), cert. denied, 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 472 (1973); *Bright v. Taylor*, 554 F.2d 854 (8th Cir. 1977).

7. Recently in *Flaherty v. Warehouseman, Garage and Service Station Employees' Local Union No. 33*, 574 F.2d 484, 487 (9th Cir. 1978),

we reiterated that because section 501(b) extends the jurisdiction of the federal courts, it must be strictly construed. Unlike the present case, *Flaherty* dealt with a situation where the plaintiffs had failed to allege that they had made a required demand on their union to secure relief. We held that failure to make the allegation required denial of leave to file the complaint. *See Horner v. Ferron*, 362 F.2d 224 (9th Cir. 1966) (prerequisites for suit under § 501(b) safeguard union officials from harassment and prevent undue judicial interference).

8. *Gurton* was recently affirmed in *Head v. Brotherhood of Railway, Airline and Steamship Clerks, etc.*, 512 F.2d 398 (2d Cir. 1975). *See Cefalo v. Moffett*, 163 U.S.App.D.C. 46, 449 F.2d 1193 (1971).

§ 501, in its analysis of the application of the section. However, the court in *Johnson v. Nelson*, 325 F.2d at 650, looked to the House Report on the Elliott bill, which contained language incorporated into the version finally enacted. The court found that this language strongly indicated the legislature's intent to make the section applicable to all fiduciary obligations of union agents, officials, or representatives, whether or not those obligations had pecuniary ramifications.

> We affirm that the committee bill is broader and stronger than the provisions of S. 1555 [McClellan-Erwin bill] which relate to fiduciary responsibilities. S. 1555 applied the fiduciary principle to union officials only in their handling of "money or other property" (see S. 1555, sec. 610), apparently leaving other questions to the common law of the several States. Although the common law covers the matter, we considered it important to write the fiduciary principle explicitly into Federal labor legislation. Accordingly the committee bill extends the fiduciary principle to all the activities of union officials and other union agents or representatives.

H.R.Rep.No.741, 86th Cong., 1st Sess., *reprinted in* [1959] U.S.Code Cong. & Admin. News, pp. 2424, 2479–80. In *Sabolsky v. Budzanoski*, 457 F.2d 1245, 1250 n.8 (3d Cir.), *cert. denied*, 409 U.S. 853, 93 S.Ct. 65, 34 L.Ed.2d 96 (1972), and *Pignotti v. Local # 3, Sheet Metal Workers International Association*, 477 F.2d 825, 834 (8th Cir.), *cert. denied*, 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 472 (1973), the courts pointed to the same language in reaching their conclusion that § 501 was to be given a broad interpretation.

At times in its legislative history versions of § 501 dealt solely with the fiduciary duties of labor officials involving financial responsibilities. Nevertheless, we believe that the language contained in the report on the Elliott bill, in conjunction with the fact that the bill's version of § 501 is the same as that finally enacted into law, clearly demonstrates that Congress intended this section to apply to fiduciary responsibilities of union officials, agents, and representatives, in any area of their authority.

Our decision regarding the application of § 501 does not mean that courts have power to intervene in intra-union affairs at slight provocation or on any invitation. Rather we confirm the principles expressed in *Phillips v. Osborne*, 403 F.2d 826 (9th Cir. 1968), that judicial interference should be undertaken only with great reluctance.

■ In this action, appellants alleged that some union officials had failed properly to exercise their duties as officers of Local 1547 and the IBEW by failing to submit a collective bargaining agreement to general membership vote in derogation of the union constitution. Although the breaches complained of do not relate to the financial affairs of the union, they are related to the fiduciary duties of the individual appellants in their official capacities as union officers. The allegation that appellees have denied the membership of the union the constitutionally guaranteed right to vote is a sufficient assertion of a breach of trust on the part of the appellees to invoke the jurisdiction of § 501. The district court's finding is affirmed.

## IV.

### SUMMARY JUDGMENT

■ After finding jurisdiction under § 501, the district court granted summary judgment for the appellees on the declaratory relief claims, finding that the union's interpretation of the constitution was reasonable, and that no breach of fiduciary duty had been shown.

Appellees rely upon Article IV, Section 3(12) of the IBEW constitution which states that the International President is empowered:

> To enter into, or authorize any I.V.P. [International Vice-President], representative, or assistant to enter into, agreements with any national or international labor organization or association of employers, or with any company, corporation or firm doing an inter-state, or inter-pro-

vincial business in electrical work, to cover the entire jurisdiction of the I.B.E.W. They argue that because the ICA was entered into with a "national" association of employers, the international president was authorized to enter into the agreement without obtaining membership ratification.

Appellants argue that the applicable section is Article IV, Section 3(13), which states:

The I.P. [International President] or his representatives shall not enter into agreements affecting wages, hours and conditions of employment where local union agreement, covering such employment, already exists, without first notifying at least thirty (30) days in advance of such agreements, the local unions so concerned or affected, in a district, and then only by procuring consent of a majority of the local unions in the district or the individual local unions affected by this agreement.

They assert that, because the ICA affects such conditions of employment as shift and apprentice ratios, the agreement must be consented to by a majority of the local unions. Additionally, they contend that Article XV, Section 5, which deals with the right to vote on certain agreements [9] mandates the submission of the ICA to a membership vote.

In opposition, appellees assert that the agreement covers all affected locals and that Section 3(13) only comes into play when the agreement affects one or more but less than all locals. They add that Article XV, Section 5, is inapplicable because it is intended to prevent local union members engaged in one form of work from voting on contracts affecting workers in another field. They also note that the final clause in Article IV states: "Nothing in this Constitution shall be construed to conflict with any of the provisions of this article."

Appellants do not attack the ICA, nor do they assert improper motives by union officials in entering into the agreement. The sole allegation of breach of fiduciary duty is that the individual appellants failed to comply with constitutional provisions. Courts have stated that union officials are required to recognize the political rights of the membership of the union as part of their fiduciary responsibility. *Pignotti v. Local 3, Sheet Metal Workers*, 477 F.2d at 832–35; Comment, *The Fiduciary Duty Under Section 501 of the LMRDA*, 75 Col.L.R. 1188, 1204–05 (1975).

Nevertheless, the court in *Vestal v. Hoffa*, 451 F.2d 706, 709 (6th Cir. 1971), cert. denied, 406 U.S. 934, 92 S.Ct. 1768, 32 L.Ed.2d 135 (1972), noted:

Courts are reluctant to substitute their judgment for that of union officials in the interpretation of the union's constitution, and will interfere only where the official's interpretation is not fair or reasonable.

*See Local Union No. 657 v. Sidell*, 552 F.2d at 1257; *Gordon v. Laborers' International Union of North America*, 490 F.2d 133, 137 (10th Cir. 1973), cert. denied, 419 U.S. 836, 95 S.Ct. 63, 42 L.Ed.2d 62 (1974). This conclusion is not inconsistent with our decision in *Kerr v. Shanks*, 466 F.2d 1271 (9th Cir. 1972), where we found that the union officials' failure to hold a referendum within 20 days of the filing of a petition was a violation of a provision of the union constitution explicitly requiring a timely referendum. The defendants' contention that another constitutional provision gave full force and effect to the challenged action of the union board until the referendum was held was found insufficient to justify the defendants' actions when read in conjunction with the mandatory referendum provision. Viewing the constitution as a whole,

---

**9.** Article XV, Section 5 reads:

Sec. 5. When there is more than one branch of workers under I.B.E.W. jurisdiction represented in a L.U. [local union], the members of each branch shall define their own scale of wages, hours and working conditions.

(However, this section shall not apply when different branches, divisions or classifications come under one blanket agreement. When these come under one agreement they shall vote as a group.)

we found the union's interpretation unreasonable.

Appellees' interpretation of the constitution is not patently unreasonable.[10] As noted in *Parks v. I.B.E.W.*, 314 F.2d 886, 893 (4th Cir. 1963), where the Fourth Circuit extensively reviewed the structure of the IBEW:

> Actually, effective control of IBEW activities is entrusted to the IP . . .
> He is empowered . . . to enter into agreements with national or international labor organizations or associations of employers.
>
> .    .    .    .    .
>
> And all bylaws, amendments and rules and all agreements of any kind are null and void unless approved by the IP who has the right to "correct" them to conform to the IBEW's Constitution and policies. (Art. XVII, §§ 7–9).

Thus, the overriding authority of the president of this international has been recognized judicially, adding credence to the appellees' interpretation.

There is ambiguity in the constitutional provisions, but we cannot say that the district court was clearly erroneous in finding that the appellees' interpretation was reasonable. Section 501 serves as a means for courts to intervene in union affairs when a fiduciary breach is demonstrated, and such a breach occurs when union officials fail to comply with the union constitution. Nevertheless, when the union officials have offered a reasonable construction of the constitution, and no bad faith on their part has been shown, the courts should not disturb the union officials' interpretation.[11]

Summary judgment on both the declaratory and injunctive relief claims was appropriate.

## V.
## DISCIPLINARY ACTION

Appellants Darby and McDaniel were active in the drive to reject the ICA. Charges were filed against them by local union officers, alleging that each had attempted to create dissatisfaction and dissension and otherwise violated the IBEW constitution.

McDaniel was found guilty of the charges and suspended from attending meetings, participating in local union affairs, or holding office for 10 years. Darby's case was remanded to the apprenticeship committee for a review of his record and he was barred from local union meetings until the report of the apprenticeship committee was received and reviewed by the executive board.

Timely appeals were made to the international vice president, Vinson. No action was taken on Darby's appeal because the international officers and the international executive board ruled there would be no reviewable decision until the executive board of the local union acted. McDaniel's appeal was denied by the vice president and he appealed to the president who informed him on July 7, 1977 that he would take no action until the court decided this case. McDaniel wrote again requesting that the international president, Pillard, review the appeal before the court made its determination.

On August 21, 1977 Pillard reversed the decision of the vice president and dismissed the charges against McDaniel. On August 31, 1977 Darby was advised that the charges against him had been withdrawn and the trial board action dismissed.

The district court dismissed the appellants' claim for declaratory and injunctive relief under §§ 101(a)(2), 102 and 609 of the LMRDA because the dismissal of the disci-

---

**10.** The proper inquiry has been described as "whether there was arguable authority for the officer's act from the officer's viewpoint at the time, not from a court's more sophisticated hindsight." D. Leslie, *Federal Courts and Union Fiduciaries*, 76 Col.L.R. 1314, 1319 (1976).

**11.** Unlike *Parish v. Legion*, 450 F.2d 821, 827 (9th Cir. 1971), the appellants have demonstrat-

ed no repeated past history of controversy surrounding the interpretation of the sections disputed here. We reaffirm the concept that the union's construction of the constitution is not binding when there is a dispute. However, it is persuasive, especially when no evidence of bad faith is presented.

plinary actions had rendered the claims moot. Attorneys' fees were denied because the court found that there had been no evidence to support such an award under *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).

In *Kerr v. Screen Extras Guild, Inc.*, 466 F.2d 1267 (9th Cir. 1972), *cert. denied*, 412 U.S. 918, 93 S.Ct. 2730, 37 L.Ed.2d 144 (1973), the plaintiff sued local union officials claiming that their harassment and threatened disciplinary proceedings violated his right of free speech under §§ 101(a)(2), 102, and 609 of the LMRDA. He requested injunctive relief, damages and costs of litigation.

On a motion for preliminary injunction, counsel for the defendants informed the court that the defendants would take no further action against Kerr and the district court dismissed the action as moot. We found that the court had properly dismissed the claims for injunctive relief, but that the issues of damages and costs were not moot. *Id.* at 1269–70. The district court had refused attorneys' fees on the ground that § 102 did not provide for them. We remanded for consideration of the damages issue and for the exercise of discretion on the issue of costs.

In this case, unlike *Kerr*, no request for damages was made. Appellants sought only to stay the enforcement of disciplinary proceedings and a declaration that their suspension and discipline were in violation of the LMRDA.

The action of the IBEW officers effectively granted the full relief sought by Darby and McDaniel. Section 101(a)(4), 29 U.S.C. § 411(a)(4), indicates congressional preferences for exhaustion of intra-union remedies before intervention by federal courts.

■ Exhaustion of remedies is not mandatory, *Winterberger v. General Teamsters Auto Truck Drivers & Helpers Local Union 162*, 558 F.2d 923 (9th Cir. 1977), and courts

have the discretion to intercede. *Id.; Buzzard v. Local Lodge 1040, International Association of Machinists and Aerospace Workers*, 480 F.2d 35, 41 (9th Cir. 1973). However, in the absence of a showing that further intra-union proceedings will be futile or inadequate, the courts are reluctant to intervene because "[t]he union may uphold plaintiff's defense, and the issue would become moot, requiring no judicial intervention." *Buzzard*, 480 F.2d at 42.

Here, the wisdom of judicial reluctance to intervene when intra-union proceedings are still available is clearly demonstrated. The intra-union proceedings, rather than futile, were beneficial to the claimants. The court's determination of mootness is affirmed.

■ In *Hall v. Cole*, 412 U.S. at 9, 93 S.Ct. 1943, the Court held that, when a plaintiff prevails in a § 102 action which vindicates the rights of free speech guaranteed under § 101(a)(2) of the LMRDA, the district court may, in its discretion, award attorneys' fees.[12] Unlike *Kerr*, the court here considered the propriety of awarding fees and, in its discretion, denied them. We find no abuse of discretion.

### IV.

### FAILURE TO INFORM

■ Appellants assert that the district court erred in dismissing their claim that appellees violated § 105 of the LMRDA, 29 U.S.C. § 415, by failing to inform the union membership of the requirements and terms of the LMRDA. The court found that the claim had not been presented to the union before suit was filed, and that exhaustion of intra-union remedies was required before suit could be filed.

Section 415 requires that every labor organization "inform its members concerning the provision of this chapter." Under § 102, any persons whose rights are protected by the provisions of the subchapter may bring an action for violation. However, under § 101(a)(4), "any such member may

---

**12.** We need not discuss whether appellants can be deemed successful plaintiffs and therefore fall under the *Hall v. Cole* guideline because we

find that even if *Hall v. Cole* is applicable, the district court did not abuse its discretion in denying the requested award.

be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within [the labor] organization, before instituting legal or administrative proceedings."

Appellants failed to present their claim to the appellees prior to suit and the union officials were unaware of the asserted failure to inform the membership. As was the case in *Broomer v. Schultz*, 239 F.Supp. 699 (E.D.Pa.1965), *aff'd* 356 F.2d 984 (3d Cir. 1966),

> [t]here is no reason to conclude that the officers of the Local will not accede to a request that they comply with the law by apprising the members of the provisions of the Act.

239 F.Supp. at 705.

Not only did appellants fail to exhaust intra-union remedies, but they also failed even to raise the issue with the union. Instead they immediately sought judicial relief. The district court was within its discretion in refusing to entertain the action.

## CONCLUSION:

Appellants seek to establish their right to vote on all collective bargaining agreements entered into by the IBEW or local union. The LMRDA guarantees union members a right to nominate officers, vote in union elections and referenda, and participate and vote on business raised at membership meetings, without discrimination. However, it does not unequivocally grant union members the right to vote on all collective bargaining agreements entered into by the international or local union to which they belong. The decision whether to grant union members such a right is one properly left to Congress.

The appellants have failed to show that the IBEW constitution gives them the right to vote on the ICA.

The judgment of the district court is affirmed.