611 F.2d 266
 103 L.R.R.M. (BNA) 2041, 87 Lab.Cas. P 11,684
 INTERNATIONAL SOUND TECHNICIANS OF the MOTION PICTURE,
BROADCAST & AMUSEMENT INDUSTRIES, LOCAL 695, etc.,
et al., Plaintiffs-Appellants,
v.
INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES &
MOVING PICTURE MACHINE OPERATORS OF the UNITED
STATES & CANADA, Defendants-Appellees.
In the Matter of the Contempt Proceeding re James OSBURN, et al.
INTERNATIONAL SOUND TECHNICIANS OF THE MOTION PICTURE,
BROADCAST & AMUSEMENT INDUSTRIES, LOCAL 695, etc.,
et al., Plaintiff-Appellants,
v.
INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES &
MOVING PICTURE MACHINE OPERATORS OF the UNITED
STATES & CANADA, Defendants-Appellees.
 Nos. 77-3235, 78-2776.
 United States Court of Appeals,
Ninth Circuit.
 Nov. 15, 1979.
Rehearing Denied Jan. 21, 1980.
 
 David B. Finkel, Finkel & Herring, Los Angeles, Cal., argued, for plaintiffs-appellants; Louise A. Monaco, Los Angeles, Cal., on brief.
 William L. Cole, Mitchell, Silverburg & Knupp, Los Angeles, Cal., argued, for defendants-appellees; J. Nicholas Counter, III, Los Angeles, Cal., on brief.
 Appeal from the United States District Court for the Central District of California.
 Before BROWNING and CHOY, Circuit Judges, and THOMPSON,* District Judge.
 PER CURIAM:
 
 
 1
 Appellants James Osburn and International Sound Technicians of the Motion Picture, Broadcast and Amusement Industries, Local 695 (collectively referred to as Local 695 for purposes of this opinion) appeal from a contempt citation issued because of their failure to comply with the provisions of a final judgment entered on May 4, 1977. From the original case, appellants Timothy Mitchell and Local 695 challenge the validity of the May 4 judgment.[1] Both cases have been consolidated for this appeal. We affirm in part, and remand in part.
 
 I. Statement of the Case
 
 2
 International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada (IATSE) is an international union of which Local 695 is a member. IATSE is also recognized by the National Labor Relations Board (NLRB) as the exclusive bargaining agent for its member locals.
 
 
 3
 As exclusive bargaining agent, IATSE negotiates two different types of contracts. First, it negotiates a general agreement which sets forth the basic employment structure for all of its member locals. Separately, IATSE conducts negotiations for tentative local agreements which incorporate both provisions from the general agreement and provisions regarding matters of local interest unique to each member local.
 
 
 4
 Prior to 1975, ratification by the affected local's membership was required before a local agreement became effective. However, in 1975, IATSE revised its constitution and by-laws regarding ratification of local agreements. The new procedures adopted by IATSE provided that All local agreements would become effective upon an aggregate majority vote of the membership of the member locals, the result being that a given local could be bound by a local agreement even though a majority of its membership voted to reject the agreement.
 
 
 5
 From 1973 until 1976, Local 695 operated without a local agreement because IATSE was unable to negotiate a tentative local agreement with terms acceptable to Local 695's members. The major stumbling block was the minimum manning requirement for certain sound crews.[2]
 
 
 6
 During 1976, IATSE reached a tentative local agreement with the Association of Motion Picture and Television Producers, Inc. (AMPTP), which included a two-person manning provision. Although a majority of Local 695's members voted to reject the agreement, a majority of the votes cast by the members of all the affiliated locals approved the terms of the agreement. In protest, Local 695 began fining its members who worked two-person crews. AMPTP responded by bringing an action before the NLRB alleging an unfair labor practice against Local 695.[3] The Board in its ruling found that Local 695's practice of issuing fines to members who worked two-person crews was a violation of 29 U.S.C. § 158(b)(1)(A) since such manning levels were authorized by the local agreement which had been ratified under the newly adopted procedures.
 
 
 7
 Local 695 then filed suit against IATSE and AMPTP alleging, Inter alia, breach of fair representation and seeking a declaration that it was not bound by the 1976 local agreement.
 
 
 8
 Five months before trial, IATSE imposed a trusteeship upon Local 695. The trustee removed Local 695's attorney from the case and substituted one of its own choice. In a separate action filed by the members of Local 695, the parties agreed to lift the trusteeship on May 5, 1977, and return control of Local 695 to its officers.
 
 
 9
 On April 14, 1977, the trustee on behalf of Local 695 entered into a settlement agreement with both IATSE and AMPTP in the original suit. The agreement provided in part:
 
 
 10
 1. The 1976 local agreement negotiated by IATSE and ratified by the member locals was binding upon Local 695.
 
 
 11
 2. The parties would submit an amendment regarding the disputed two-person manning provision to the membership of Local 695 for ratification.
 
 
 12
 3. The parties agreed to execute the 1976 local agreement within fifteen days of the ratification vote whether or not the amendment was accepted by the members of Local 695.
 
 
 13
 The amendment was ratified and the settlement agreement was incorporated into a final judgment which was entered on May 4, 1977.[4] Local 695 filed a notice of appeal.
 
 
 14
 Approximately a year later after numerous refusals by Local 695 to execute the 1976 local agreement, AMPTP moved the district court to find Local 695 in contempt. After a hearing, the trial judge ordered Local 695 to pay AMPTP $500 per day for a maximum period of twenty days until the local and its business representative, James Osburn, signed the agreement; and further ordered Osburn jailed at the end of that twenty-day period unless and until the local agreement was signed.
 
 II. Discussion
 
 15
 There are two appellants, Local 695 and Timothy Mitchell.
 
 
 16
 Local 695 argues that it could not be required by the district court to execute the 1976 local agreement because refusal to sign a collective bargaining agreement constitutes an unfair labor practice within the exclusive jurisdiction of the NLRB and because requiring the local to sign the agreement would violate its first amendment rights. However, in the settlement of its lawsuit against IATSE and AMPTP, Local 695 explicitly agreed to be bound by the 1976 local agreement and to execute it. Local 695 has not challenged the validity of this settlement agreement. Local 695 is therefore bound to execute the 1976 local agreement by virtue of the settlement agreement whether or not it could be required to do so absent the settlement agreement.
 
 
 17
 Appellant Mitchell contends only that the attorney who negotiated the settlement agreement was subject to a conflict of interest. But Mitchell voluntarily selected this attorney and signed a notice of Substitution of Attorney. Moreover, Mitchell made no attempt to replace the attorney until two days of trial had been completed. By his acquiescence he waived any possible claim based on conflict of interest.
 
 
 18
 There is little doubt that the sanctions imposed by the district court will eventually motivate compliance on the part of Local 695. This fact coupled with a review of the record indicates that neither the imposition nor the severity of the sanctions constitutes an abuse of discretion. However, because these sanctions were intended to be coercive and not compensatory, we remand to the district court with instruction to modify the judgment to provide that the fine be paid to the United States rather than to AMPTP. The judgment is in all other respects AFFIRMED.
 
 
 19
 BRUCE R. THOMPSON, District Judge, dissenting.
 
 
 20
 I respectfully dissent. First, I believe the original action was arguably not within the jurisdiction of the district court inasmuch as the basic claim for relief was predicated on an alleged violation of the international constitution and by-laws. Stelling v. Int. Broth. of Elec. Workers, 587 F.2d 1379 (9th Cir. 1978), cert. denied, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979).
 
 
 21
 Second, I resent the manipulation of the judicial process by the international union (IATSE) and the employer (AMPTP). The original action was brought by Local 695 against IATSE and AMPTP for declaratory relief. IATSE imposed a trusteeship on Local 695 and took over control of the action. Members of Local 695 brought suit to dissolve the trusteeship and to regain control of their union and their lawsuit. Meanwhile, the principal action under control of the trustee was settled, and as soon as this was accomplished, in the companion action IATSE agreed to dissolve the trusteeship on May 5, 1977 and to return control of the Local Union to its members. The final judgment approving the settlement agreement was entered on May 4, 1977. Thus it is purest sophistry to emphasize that the judgment is "the product of voluntary negotiations conducted by the three parties." (Footnote 4). The foregoing discussion is background for my third, and compelling point, and does not relate to any particular assignment of error.
 
 
 22
 Third, it was an abuse of discretion for the trial judge to impose sanctions against Osburn and Local Union 695 to compel, at the behest of the employer, the performance of a vain and useless act. Judicial contempt power is awesome. It should be employed cautiously and dispassionately, particularly in civil actions and should never be employed "where it is not necessary or proper." Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 451, 31 S.Ct. 492, 502, 55 L.Ed. 797 (1911). See also: United States v. United Mine Workers, 330 U.S. 258, 304, 67 S.Ct. 677, 91 L.Ed. 884 (1947).*
 
 
 23
 If this were a citation for criminal contempt, different considerations would be applicable. In the context of this record, however, with an agreement that was self-executing conceived and negotiated by a trustee, the validity of whose presence was the subject of litigation, an agreement which was approved by the court and decreed to be in effect irrespective of its execution by anyone, an agreement with the substantive terms of which the Local Union has fully complied, an agreement and decree, which, if violated in the respects alleged, was an illusory violation which, concededly caused no harm to anyone and invoked sanctions which benefited no one, this was purely a wrist-slapping and face-saving procedure which did not warrant the attention of a federal judge. Cf. Latrobe Steel Co. v. United Steelworkers, 545 F.2d 1336 (3d Cir. 1976).
 
 
 
 *
 The Honorable Bruce R. Thompson, United States District Judge for the District of Nevada, sitting by designation
 
 
 [1]
 Jurisdiction in this case is based on § 301 of the LMRA, 29 U.S.C. § 185. Among the many allegations in its complaint Local 695 alleges interference in its relationship with individual AMPTP members, impairment of its status as a collective bargaining representative, collusion between AMPTP and IATSE in the collective bargaining process and a resulting loss of employment by its membership. The dispute is therefore not merely "intra-union" requiring only an interpretation of the union constitution as was the dispute in Stelling v. IBEW, 587 F.2d 1379, 1384 (9th Cir. 1978), but rather one with "traumatic industrial and economic repercussions" which seriously affect labor-management relations. See Parks v. IBEW, 314 F.2d 886, 916 (4th Cir.), Cert. denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963)
 
 
 [2]
 Local 695 resisted every attempt by AMPTP to reduce the manning requirements for certain sound crews from three to two persons
 
 
 [3]
 International Sound Technicians, Local 695, and Association of Motion Picture and Television Producers, Inc., 234 NLRB No. 107 (February 9, 1978)
 
 
 [4]
 Of particular significance is the fact that the judgment is the product of voluntary negotiations conducted by the three parties
 
 
 *
 "But where the purpose is to make the defendant comply, the court's discretion is otherwise exercised. It must then consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired."