Benjamin R. BURROUGHS, on Behalf of
OPERATING ENGINEERS LOCAL
UNION NO. 3, Plaintiff,

v.

Dale MARR, et al., Defendants.

No. C–82–0725 WHO.

United States District Court,
N.D. California.

Oct. 8, 1982.

Michael Friedman, Dan Siegel, Siegel, Friedman & Dickstein, Oakland, Cal., for plaintiff.

John J. Davis, Jr., Raphael Shannon, McCarthy, Johnson & Miller, San Francisco, Cal., for defendants Marr, Huston, Ivy, Strate and Wright.

Patrick J. Mahoney, Kimball S. Atwood, Cooley, Godward, Castro, Huddleson & Tatum, San Francisco, Cal., for defendant Lewis.

## OPINION AND ORDER

ORRICK, District Judge.

Plaintiff, Benjamin Burroughs, a retired member of Operating Engineers Local Union No. 3 ("Local 3"), brings this action for breach of fiduciary duty against six union officials, Dale Marr, Harold Huston, James R. Ivy, Harold K. Lewis, Donald R. Strate, and Dennis Wright, pursuant to Section 501 of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 401–531, which requires that a union member, as a prerequisite to filing suit, first obtain leave of court "upon verified application and for good cause shown, which application may be made ex parte." 29 U.S.C. § 501(b). There are three motions presently before the Court. Plaintiff's motion to disqualify counsel for defendants on the grounds that said counsel is the law firm for Local 3 and, therefore, that an inherent conflict of interest exists, is DENIED. The motion by defendants for summary judgment or, in the alternative, for an order vacating the leave to file the complaint is GRANTED, and the motion by defendant Lewis to dismiss the complaint or, in the alternative, for an order vacating the leave to file the complaint is GRANTED, and the action is dismissed because plaintiff has not demonstrated the requisite good cause for filing the complaint.

I

Section 501(a) of the LMRDA establishes the fiduciary duties that union officers and representatives owe to the union, and Section 501(b) provides union members with a qualified right of action to redress violations of those duties. In order to bring

an action under Section 501(b), a union member must first obtain leave of court to file the complaint, "upon verified application and for good cause shown, which application may be made ex parte." Where leave to file suit is granted *ex parte,* the defendant may subsequently seek to have leave vacated if the plaintiff cannot demonstrate the requisite good cause. *Dinko v. Wall,* 531 F.2d 68 (2d Cir.1976); *Campton v. Johnson,* 95 LRRM 2788 (N.D.Cal.1977).

The Ninth Circuit has on several occasions pointed out the importance of the good cause requirement of Section 501(b), noting that, as a condition precedent to filing a complaint, it is designed to protect unions and their officers from harassing and vexatious litigation. *See, e.g., Stelling v. International Brotherhood of Electrical Workers, Local No. 1547,* 587 F.2d 1379, 1387 (9th Cir.1978); *Horner v. Ferron,* 362 F.2d 224, 228 (9th Cir.1966). Section 501 does not prescribe any procedure for determining whether good cause exists, and the most illuminating discussion of the good cause requirement is contained in the leading case of *Dinko.* The Court in *Dinko* interpreted the good cause requirement as follows:

" 'Good cause' is an elastic concept, and is often used as a shorthand summary of the underlying policy reasons why a litigant should be able to attain a specified result. Here, two policies compete: supervision of union officials in the exercise of their fiduciary obligations and protection, through a preliminary screening mechanism, of the internal operation of unions against unjustified interference or harassment. We believe that both these policies are served if good cause in section 501(b) is construed to mean *plaintiff must show a reasonable likelihood of success and, with regard to any material facts he alleges, must have a reasonable ground for belief in their existence.*" (Footnote omitted, emphasis added.)

*Dinko, supra,* 531 F.2d at 75. With respect to the procedural aspects of the good cause determination, *Dinko* suggests that the court is not limited to the face of the complaint in determining good cause, and that the factual showing required to establish good cause should be somewhat less demanding than that required to defend against a summary judgment motion, though more demanding than that required to withstand a motion to dismiss. *Dinko* cited with approval the opinion in *Horner, supra,* which cautioned against the resolution of complex legal questions or disputed issues of material fact more appropriately dealt with at the summary judgment rather than at the good cause stage.

For purposes of the instant case, it is particularly important (1) to note that Section 501 is not properly utilized as a discovery tool, and (2) to understand the relationship between Section 501 and Section 201, which provides union members with access to union books and records. Section 201(b) requires extensive record keeping by the union; Section 201(c) requires that unions make their records available to members and creates a cause of action by which union members may sue to enforce that requirement. Thus, a union member who suspects union officials of malfeasance can demand access to the union's books and records and, if necessary, sue the union to obtain such access under Section 201(c); if an examination of the union records discloses sufficient facts to establish a reasonable basis for the belief that union officials have breached their fiduciary obligations to the union, the union member may then bring suit under Section 501. *See Gabauer v. Woodcock,* 594 F.2d 662 (8th Cir.1979).

II

Turning now to the motion of defendants for summary judgment or, alternatively, for an order vacating leave to file the complaint, the Court finds that plaintiff has not demonstrated the requisite good cause with respect to the five claims of breach of fiduciary obligation asserted against these defendants. Plaintiff's speculative and conclusory allegations of wrongdoing, devoid of evidentiary support, do not satisfy the good cause standard as set forth in *Dinko, i.e.,* a likelihood of success and a reasonable ground for belief with regard to

the material facts alleged. Plaintiff's assertions that the facts that would prove or disprove his allegations cannot be determined without further discovery do not relieve him of his burden under Section 501 to establish good cause at the time the lawsuit is filed.

### A

The first claim alleges that defendant Marr, Local 3's Business Manager, breached his fiduciary duty by using Local 3 resources and prestige to promote "bad" insurance policies. Plaintiff alleges that Marr had Local 3 send promotional materials for American Income Life Insurance Company together with his letter of endorsement, to the Local 3 membership, thereby causing the union to incur out-of-pocket expenses for the mailings, and sullying the union's reputation because the policies were "bad." The declaration of Irving Meyerson, Local 3's certified public accountant, demonstrates that American Income Life Insurance Company fully reimbursed Local 3 for the mailings, and thus that there was no out-of-pocket expense to the union. Plaintiff has failed to come forward with any facts to the contrary. Moreover, defendants have demonstrated that, even if the union had incurred an expense, the authority to make the mailings was within the scope of Marr's authority as Business Manager under the union's by-laws, and consequently the authorization of the mailings could not constitute a breach of fiduciary obligation under Section 501. *See Stelling v. IBEW Local 1547,* 587 F.2d 1379 (9th Cir.1978). Finally, plaintiff's claim that Local 3's reputation was sullied because the insurance policies were "bad" is not supported by specific facts, and does not in any event allege the type of injury to the union that would be cognizable under Section 501. Under these circumstances, plaintiff has not demonstrated good cause, and the order granting leave to file the complaint must be vacated with respect to the first claim.

### B

The second claim charges defendants Marr and Ivy, Local 3's Recording-Corresponding Secretary, with authorizing the sale and purchase of vehicles for the benefit of persons and entities other than Local 3; the claim apparently incorporates by reference certain allegations contained in a letter that plaintiff wrote to the union on December 20, 1981, charging George Baker, the former Property Manager for Local 3, with incurring losses in the purchases of certain vehicles. The declaration of Marr states that no losses were actually incurred in the course of the transactions in issue, and further indicates that Marr and Ivy authorized the transactions in the exercise of their proper authority under the by-laws. Plaintiff's failure to come forward with any facts tending to contradict the facts set forth in the Marr declaration compels the Court to find that plaintiff has not demonstrated good cause, and that the order granting leave to file the complaint must be vacated with respect to the second claim.

### C

The third claim charges Marr with breach of fiduciary obligations arising from his failure to report a theft of union funds to the union membership. The declaration of Robert Malley, Office and Personnel Manager for Local 3, states that a secretary who handled cash dues and initiation fees stole a sum of money; upon discovery of the theft, a claim was made on the secretary's fidelity bond; the surety paid the claim; no loss was incurred by the union; and the matter was referred to the Department of Labor, which conducted a preliminary investigation and decided not to pursue the matter further. On this state of facts, plaintiff's conclusory allegation that he believes some loss may have been incurred by the union, and his assertion that the accuracy of Malley's version of the events cannot be determined without further discovery, are clearly insufficient to constitute good cause, and leave to file the complaint must be vacated as to the third claim.

### D

In his fourth claim, plaintiff charges Marr and Huston, President of the Public

Employees District Council No. 1, with breach of fiduciary duty based upon the approval of certain allegedly improper payments made by Local 3 to District Council No. 1. Defendants have presented the declarations of Gary Fernandez, the Director of the Public Employees Division of Local 3, and Irving Meyerson, the certified public accountant for Local 3, which state that in 1976 Local 3 participated with other locals in a District Council for the purpose of providing representation to their public employees on a group basis. The declarations further state that the monies paid to the Council were in the form of per capita taxes levied under the union's by-laws, and that all such payments were reported to Local 3's Executive Board; and that Local 3 received payments from the Council in exchange for permitting the Council to use Local 3 staff and office facilities, which payments were in excess of the payments made by Local 3. Plaintiff's failure to present any reasonable basis for believing that a loss was in fact incurred by the union precludes a finding of good cause in support of this claim, and leave to file the complaint must be vacated as to the fourth claim.

### E

Plaintiff's fifth claim charges defendants Marr, Strate, and Wright, Local 3's Business Manager, Business Representative, and Business Agent, respectively, with breach of fiduciary duties in connection with the payment of strike benefits to certain ineligible Thorn Rock Products employees. According to the declarations of Marr and Miller, certain stewards and Strate and Wright, during a strike at Thorn Rock Products in Utah, cooperated in a plan whereby workers who were themselves ineligible for strike benefits, by reason of having accepted other employment, continued to receive strike benefits checks which were then endorsed for the benefit of the Thorn Rock picketers. Marr, after learning of this practice, conducted an investigation and made a full report to Local 3's Executive Board, and the Board voted to approve the payments on a hardship basis on the grounds that the money, although improp-

erly obtained, was used to support the strike in accordance with the purposes of the Local 3 Hardship Strike and Lockout Fund as set forth in the by-laws. Plaintiff relies upon two reports made by the Department of Labor following an investigation of the Thorn Rock payments, which plaintiff contends cast serious doubt upon defendants' version of the incident and indicate that the strike funds were converted to Strate and Wright's personal use. An examination of the Department of Labor reports does not reveal any specific facts contrary to those stated in the declarations of Marr and Miller, however, and do not provide a reasonable basis for plaintiff's belief that the material facts are seriously in dispute. Thus, plaintiff has failed to demonstrate that the fifth claim is supported by good cause, and the order granting leave to file the complaint must be vacated as to this claim.

On the basis of the foregoing, it is clear that plaintiff has not demonstrated the requisite good cause as to any of the five claims against defendants, and that the order granting leave to file the complaint must be vacated as to those claims.

### III

Plaintiff's claim against Harold K. Lewis, Financial Secretary of Local 3, charges Lewis with a breach of his fiduciary duties to Local 3, and to the Operating Engineers Local Union 3 and Participating Employers Pre-Apprentice and Journeyman Affirmative Action Training Fund for Hawaii (the "Hawaii Plan"), of which Lewis is a trustee. The complaint alleges that Lewis authorized the use of Hawaii Plan resources for improper purposes, converted Hawaii Plan resources to his own use, and transferred Hawaii Plan assets to the use or profit of Local 3, and further alleges that the Executive Board has failed to comply with plaintiff's petitions for an accounting of these transactions and for the removal of Lewis from his position as Local 3 co-chairman of the Hawaii Plan. This claim is brought pursuant to Section 501 of the LMRDA, and, additionally, Section 502(e)(1)

of the Employee Retirement Income and Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(1). Defendant Lewis has moved to dismiss the complaint or, in the alternative, to vacate the order granting leave to file the complaint, on the following grounds: (1) the allegations against defendant are so vague and conclusory that they do not give fair notice of the acts complained of and do not enable the defendant to formulate a responsive pleading; (2) the allegations do not state a claim for relief under Section 501 of the LMRDA because plaintiff has not alleged any injury to the union; and (3) insofar as plaintiff purports to bring his claim under Section 502(e)(1) of ERISA, plaintiff lacks standing to bring such a claim.

The Court finds that plaintiff has failed to demonstrate the requisite good cause in support of his claim against Lewis, on the grounds that plaintiff has demonstrated neither a likelihood of success nor any reasonable basis for the material facts alleged. The complaint sets forth only vague and conclusory allegations of wrongdoing, and plaintiff has nowhere attempted to identify the specific transactions complained of or the factual basis for his belief that those transactions were improper. Furthermore, plaintiff has failed to demonstrate any reasonable basis for believing that the allegedly improper transactions resulted in an injury to Local 3 which would be cognizable under Section 501. No injury to Local 3 is alleged in the complaint. In his papers in opposition to this motion, plaintiff alleges two types of injury sustained by Local 3 as a result of Lewis' conduct: the sullying of Local 3's reputation, and financial loss due to the commingling of Local 3 and Hawaii Plan assets. The injury to the union's reputation alleged by plaintiff is clearly not an injury which would be cognizable under Section 501. *Stelling, supra.* Plaintiff has offered no factual basis whatsoever for his belief that Local 3 incurred financial loss as a result of the complained of transactions; indeed, the allegations in the complaint are directed towards the diversion of assets from the Hawaii Plan to the use or profit of Local 3. Finally, to the extent that plaintiff seeks to bring his claim under Section 502(e)(1) of ERISA, he has failed to allege that he has standing to bring an ERISA claim, because he has not alleged that he is a participant, beneficiary, or fiduciary of the Hawaii Plan. *See* 29 U.S.C. § 1132(e)(1). Moreover, if plaintiff were permitted to amend his complaint to allege standing, it appears to the Court that he would have virtually no likelihood of prevailing on his argument that he should be considered a fiduciary of the Hawaii Plan on the theory that the commingling of Local 3 and Hawaii Plan assets renders Local 3 and all of its members fiduciaries within the meaning of the Act.

IV

■ Finally, the Court turns to consideration of plaintiff's motion to disqualify counsel for the defendants on the grounds that said counsel is the law firm for Local 3 and, therefore, an inherent conflict of interest exists. The courts have consistently held that a motion to disqualify counsel is properly considered only after a determination that plaintiff has established good cause for filing the complaint and has shown a reasonable likelihood of success on the merits. *See, e.g., Holdeman v. Sheldon,* 311 F.2d 2 (2d Cir.1962); *Tucker v. Shaw,* 378 F.2d 304 (2d Cir.1967). Moreover, it appears obvious as a matter of common sense that the purpose of the good cause requirement of Section 501, namely, to protect union officials from frivolous and vexatious lawsuits, *see discussion, supra,* would be undermined by disqualifying union counsel and compelling union officials to obtain new counsel prior to any determination that there was good cause for the filing of the complaint. In accordance with this reasoning, and in view of the Court's finding that plaintiff in this case has failed to demonstrate good cause for the filing of the complaint and has not shown any likelihood of success on the merits, the Court finds that plaintiff's motion to disqualify counsel for the defendants is denied. The Court expressly notes, however, that the denial of plaintiff's motion, for the reasons stated

above, is not meant to intimate any view as to whether union counsel should be disqualified from representing union officials who are defendants in a derivative suit under Section 501 in a case where the plaintiff has established the requisite good cause for filing his complaint.

V

The Court having determined, for the reasons stated above, that plaintiff has failed to satisfy the good cause requirement of Section 501 of the LMRDA,

IT IS HEREBY ORDERED that the order issued on February 19, 1982, granting leave to file the complaint is hereby vacated, and the complaint in the above-entitled action is dismissed.