625 F.2d 819
 104 L.R.R.M. (BNA) 2579, 88 Lab.Cas. P 12,054
 LODGE 1380, BROTHERHOOD OF RAILWAY, AIRLINE AND STEAMSHIP
CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES
(BRAC); National Referendum Committee; Peter Pallipamu; John
Espe; Bart Longmore; and Lawrence White, Plaintiffs-Appellants,
v.
C. L. DENNIS; and the Grand Lodge, Brotherhood of Railway,
Airline and Steamship Clerks, Freight Handlers,
Express and Station Employees (BRAC),
Defendants-Appellees.
 No. 78-1005.
 United States Court of Appeals,
Ninth Circuit.
 April 29, 1980.
 
 Daniel Hoyt Smith, Smith, Kaplan, Withey, Theiler & Sowa, Seattle, Wash., argued, for plaintiffs-appellants.
 Solomon I. Hirsh, Hirsh & Schwartzman, Chicago, Ill., argued, for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before WRIGHT and WALLACE, Circuit Judges, and BELLONI,* District Judge.
 WALLACE, Circuit Judge:
 
 
 1
 Lodge 1380 (Lodge) brought this action against the Grand Lodge, Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees (BRAC) and Dennis, president of BRAC. Lodge alleged that BRAC and Dennis violated various provisions of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 401-531, and section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), by refusing to give Lodge access to a mailing list of all BRAC members, and by refusing to hold a referendum called for by the BRAC constitution. The district court dismissed the complaint for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction, and Lodge appealed. We affirm in part and reverse and remand in part.
 
 
 2
 Lodge, a chartered subdivision of BRAC, has the same general relationship to BRAC as local unions in other industries have to their international unions. In 1975, Lodge organized a committee to seek an amendment to the BRAC constitution that would provide for rank and file ratification of all BRAC collective bargaining agreements. At the time, union-wide contracts went into effect upon acceptance by BRAC leadership, with the individual members having no opportunity to approve or disapprove the agreement. Lodge sought adoption of the amendment pursuant to Article 33 of the BRAC constitution which requires that a referendum vote of all BRAC members be taken upon the request of 100 or more lodges or divisions in at least ten states or provinces. In order to generate the needed support for the referendum, Lodge asked Dennis to provide it with access to mailing lists of all BRAC members. Dennis denied the request, explaining that BRAC policy prohibited public disclosure of such lists. Dennis' denial was affirmed on appeal to the BRAC executive council.
 
 
 3
 Although frustrated in its attempt to secure BRAC's mailing list, Lodge alleges that it still managed to generate the requisite 100 petitions by use of mailing lists obtained from the Department of Labor. Nonetheless, Dennis refused to hold the referendum when the petitions were submitted to BRAC, apparently relying upon a prior official interpretation of the BRAC constitution, issued by Dennis, which stated that a referendum could not be held upon a proposal recently voted down at a BRAC convention. Lodge appealed this refusal to the executive council and the council again affirmed Dennis' decision.
 
 
 4
 In its complaint against BRAC and Dennis, Lodge pled three causes of action: 1) that the refusal to disclose membership lists and hold the referendum breached the BRAC constitution which, it contends, is a contract between BRAC and Lodge within the meaning of LMRA § 301, 29 U.S.C. § 185(a); 2) that the BRAC refusals also denied Lodge the equal vote and free speech rights guaranteed by LMRDA § 101(a)(1) and (2), 29 U.S.C. § 411(a)(1) and (2); and 3) that Dennis' conduct breached his fiduciary duties set forth in LMRDA § 501, 29 U.S.C. § 501.[1] We will consider each of Lodge's claims separately in reviewing the district court's dismissal. First, however, we must respond to BRAC's contention that the case is moot.
 
 I.
 
 5
 The BRAC international conference of May 1979 considered several constitutional amendments similar to Lodge's 1975 referendum proposal, and adopted an amendment providing for membership ratification of collective bargaining agreements. One of the amendments considered and rejected at the convention was proposed by Lodge and was a somewhat modified version of the proposal that gave rise to this lawsuit. BRAC contends that this case has become moot because Lodge received its long-sought opportunity to propose an amendment to a voting body of BRAC members, because the 1975 proposal was abandoned due to the significant differences between it and the 1979 Lodge proposal, and because the conference adopted an amendment providing for a form of rank and file contract ratification. Were we to conclude that Lodge is suing solely to obtain the opportunity once to put its 1975 amendment to the vote of BRAC, these contentions would have some merit. The essence of Lodge's claim, however, is that BRAC wrongfully denied access to its membership lists and disregarded Article 33 of its constitution. The 1979 conference vote did nothing to rectify those alleged wrongs, nor to make the relief requested unnecessary.
 
 
 6
 A case has become moot when "(1) it can be said with assurance that 'there is no reasonable expectation . . .' that the alleged violation will recur, . . . and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (citations omitted). Lodge seeks a declaration and injunction assuring that membership lists will be made available in the future and that BRAC will no longer interfere with its right to obtain a referendum pursuant to Article 33. Nothing that occurred at the BRAC 1979 conference suggests that lists will be available or Article 33 honored absent such relief. Although Lodge took the opportunity to propose an amendment at the conference, the proposal was made to delegates of the BRAC membership and not to the rank and file members who would vote in referendum balloting. Moreover, Lodge is still without the membership lists that would permit widespread solicitation of support for its referendum proposal. It thus cannot be said with assurance that the alleged wrongs will not recur or that the conference eradicated all effects of BRAC's alleged wrongful conduct.
 
 
 7
 BRAC also contends that any claims made against Dennis are moot because he retired shortly after the commencement of this action and has since died. In the district court, Lodge attempted to rectify that problem by requesting a 30-day period in which to perfect service upon the current president of BRAC. The district court denied that motion without reaching its merits because the complaint, even with proper service, stated no section 501 cause of action. Because we find that the complaint does state a section 501 cause of action against Dennis, the case will be remanded to the district court where Lodge may again pursue its motion for leave of court to serve the current BRAC president. Moreover, even if Lodge is not permitted to serve the current BRAC president, the claims against Dennis are not moot. The section 501 claim is brought against Dennis personally and Lodge seeks costs and attorney's fees which would be recoverable from his estate.
 
 II.
 
 8
 In its first claim, Lodge contends that the BRAC constitution is a contract for purposes of federal jurisdiction under LMRA § 301(a), 29 U.S.C. § 185(a).[2] Consequently, Lodge argues that the district court has authority to remedy BRAC's and Dennis' disregard of Article 33 as a breach of contract between labor organizations. The district court concluded that it lacked subject matter jurisdiction over this claim because it described what was "in essence an internal union dispute rather than one involving labor management relations." We agree.
 
 
 9
 It is well settled in this court that "if a controversy is related only to a union dispute which will not affect external labor relations, § 301 does not provide a basis for jurisdiction." Stelling v. IBEW Local 1547, 587 F.2d 1379, 1384 (9th Cir. 1978), cert. denied, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979); Hotel & Restaurant Employees Local 400 v. Svacek, 431 F.2d 705, 706 (9th Cir. 1970). Lodge responds by arguing that if its amendment is not adopted by referendum, the membership of BRAC may be forced to work under a contract with which they disagree and that the "easily foreseeable result" will be constant outbreaks of industrial strife and many local or even national wildcat strikes. However, the allegedly wrongful conduct in this case is not denial of membership ratification of collective bargaining agreements, but rather the denial of referendums and access to membership lists. That the amendment giving rise to this suit would provide for member ratification of collective bargaining agreements is only incidental to the complaint made and the relief sought.
 
 
 10
 In Stelling v. IBEW Local 1547, supra, the plaintiff union members claimed that the international union's constitution required membership ratification of collective bargaining agreements. In concluding that section 301 did not grant federal court jurisdiction, we stated:
 
 
 11
 The question whether a union constitution grants members the right to vote on the ratification of collective bargaining agreements exemplifies the kind of intra-union issue that does not affect labor-management relations without further specific allegations of such impact. The issue is of an intra-union nature and Congress and the courts have been uniformly reluctant to permit judicial intervention in ongoing internal union affairs.
 
 
 12
 587 F.2d at 1384. If the claim that a union constitution mandates rank and file ratification of collective bargaining agreements is an intra-union issue insufficient to invoke section 301, then a fortiori Lodge's claim, seeking a referendum to amend the constitution to mandate such ratification, is insufficient. The controversy over BRAC's unwillingness to reveal membership lists and its administration of Article 33 is purely a matter of internal union policy. Lodge's allegation that failure of the referendum will result in constant outbreaks of industrial strife is supported by no allegation that such strife exists under the present system of management ratification of union-wide contracts. "The threat to industrial peace is too speculative to support a conclusion that external labor relations are affected." Studio Elec. Technicians Local 728 v. International Photographers of the Motion Pictures Indus. Local 659, 598 F.2d 551, 554 (9th Cir. 1979).
 
 III.
 
 13
 Before we consider the district court's rejection of Lodge's second claim, based upon LMRDA § 101(a)(1) and (2), we must consider the appropriate standard of review. As to this claim, BRAC contends that the district court rendered summary judgment in its favor and that we are, therefore, free to consider not only the face of Lodge's complaint but also any evidence that was introduced in the district court. Specifically, to rebut Lodge's allegation that BRAC and Dennis wrongfully refused to hold the referendum when presented with the requisite 100 petitions needed to invoke Article 33 procedures, BRAC produced an affidavit stating that it had received only 84 petitions. On the strength of that affidavit BRAC now claims that Lodge failed to satisfy the requirements of Article 33 and that the denial of the referendum could not, therefore, have been wrongful. We can consider BRAC's affidavit only if the district court rendered summary judgment. If the dismissal was for failure to state a claim upon which relief can be granted, our review is limited to its face.
 
 
 14
 BRAC contends that the district court elected, pursuant to Federal Rule of Civil Procedure 12(b),[3] to treat the motion to dismiss as a motion for summary judgment. A Rule 12(b) dismissal constitutes summary judgment if evidence outside the complaint was not excluded from the court's consideration. Dorado v. Kerr, 454 F.2d 892, 896 (9th Cir.), cert. denied, 409 U.S. 934, 93 S.Ct. 244, 34 L.Ed.2d 188 (1972); Whitner v. Davis, 410 F.2d 24, 27 (9th Cir. 1969). In Costen v. Pauline's Sportswear, Inc., 391 F.2d 81 (9th Cir. 1968), we relied on two factors in deciding that a district court rendered summary judgment rather than dismissed the cause for failure to state a claim. First, the district judge did not "indicate in any . . . affirmative manner that the material (outside the complaint) was being excluded." Id. at 84. While in this case the district court similarly did not expressly exclude consideration of the BRAC affidavit, the language of the district judge's order belies that he granted summary judgment. The BRAC affidavit, if true, completely undercuts the evidentiary base of Lodge's claim that it was entitled to the Article 33 referendum, and it is therefore reasonable to conclude that the district judge would have used language to that effect had he relied on the affidavit in dismissing the complaint. He clearly did not do so.[4]
 
 
 15
 The second factor in Costen was that the reasons for dismissal "indicate(d) to us that the (district) court did in fact consider matters outside the complaint." Id. Not only did the order's reasoning and language evidence reliance on external matters, but the record suggested that the district court treated the dismissal motion as a motion for summary judgment. Id. at 84-85. Such is not the case here. The district court's express reason for dismissing Lodge's complaint was that it "fails to state a claim for which relief can be granted,"[5] and nothing in the record suggests reliance on the BRAC affidavit. We conclude, therefore, that the district court dismissed for failure to state a claim upon which relief could be granted.[6]
 
 
 16
 In reviewing a dismissal for failure to state a claim upon which relief can be granted, all material allegations in Lodge's complaint are to be taken as admitted and the complaint is to be construed liberally in favor of Lodge. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969) (Opinion of Marshall, J.); Sherman v. Yakahi, 549 F.2d 1287, 1290 (9th Cir. 1977). Moreover, it is an "accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).
 
 IV.
 
 17
 In its second cause of action Lodge essentially makes two claims: that the conduct of BRAC and Dennis 1) denied Lodge's equal right to vote in violation of LMRDA § 101(a)(1), 29 U.S.C. § 411(a)(1), and 2) denied Lodge's freedom to speak and express its views in violation of LMRDA § 101(a)(2), 29 U.S.C. § 411(a)(2). The district court dismissed for failure to state a claim because Lodge 1) alleged no "discriminatory denial of (its) right to participate in union affairs" as required by LMRDA § 101(a)(1), and 2) alleged no "infringement of (its) right to freedom of speech" as required by LMRDA § 101(a)(2). We affirm the district court's conclusion that no claim was stated under section 101(a)(1), but reverse the dismissal of the section 101(a)(2) claim.[7]
 
 A.
 
 18
 LMRDA § 101(a)(1) provides that every member of a union shall have "equal rights and privileges . . . to vote in elections or referendums" and to participate in other union business. 29 U.S.C. § 411(a)(1).[8] "Plainly, this is no more than a command that members and classes of members shall not be discriminated against in the right to nominate and vote." Calhoon v. Harvey, 379 U.S. 134, 139, 85 S.Ct. 292, 295, 13 L.Ed.2d 190 (1964). Therefore, we have concluded that "(j)urisdiction under section 101((a)(1)) exists only when such discrimination has been alleged." Stelling v. IBEW Local 1547, supra, 587 F.2d at 1384.
 
 
 19
 Lodge's second claim does not allege discrimination. There is no allegation that the membership lists denied to Lodge were given to others or that Article 33 was interpreted less favorably for Lodge than for others. Lodge contends that the party treated more favorably than itself was BRAC that the unequal treatment cognizable under section 101(a)(1) can occur between unions in the position of a local and an international.
 
 
 20
 In Sheldon v. O'Callaghan, 497 F.2d 1276 (2d Cir.), cert. denied, 419 U.S. 1090, 95 S.Ct. 681, 42 L.Ed.2d 682 (1974), the only case that we have found even remotely supportive of Lodge's contention, section 101(a)(1) was applied to require an international union to make a membership list available to a local union so that the local could mail its views to union members. Even if we followed Sheldon, that case is not supportive of Lodge's discrimination contention for two reasons. First, the court in Sheldon did not require discrimination as an element of a section 101(a)(1) claim. Therefore, Sheldon does not stand for the proposition that section 101(a)(1) discrimination may occur between an international union and its chartered subdivision. Second, even if we assume that Sheldon does stand for Lodge's position, it would not require reversal in this case. In Sheldon the international union used the membership list in its possession actively to promote adoption of the proposal that the plaintiffs sought to oppose. Id. at 1279. In this case, however, Lodge does not allege that BRAC or Dennis utilized the mailing list or Article 33 to benefit themselves while denying an equal opportunity to Lodge, or, to be more specific, that they mailed anti-referendum information to union members in the discriminatory manner of the international in Sheldon. Lodge has thus failed to allege the discrimination necessary to obtain jurisdiction under section 101(a)(1).
 
 B.
 
 21
 LMRDA § 101(a)(2) provides that union members have the right to assemble, "express any views, arguments, or opinions," and to do so freely within and without union meetings. 29 U.S.C. § 411(a)(2).[9] BRAC contends that this provision was created by Congress for the sole purpose of preventing active union reprisals for member exercise of free speech and, therefore, that Lodge's complaint was properly dismissed because it alleged only that BRAC and Dennis passively refused to act. In support of this restrictive reading, BRAC cites Yanity v. Benware, 376 F.2d 197 (2d Cir.), cert. denied, 389 U.S. 874, 88 S.Ct. 167, 19 L.Ed.2d 158 (1967), which held that a union president's refusal to call a special grievance meeting as required by the union constitution did not violate the statute because section 101(a)(2) was intended only "to enable union members to meet outside their regular union meetings for the purpose of discussing internal union affairs without fear of reprisal by union officials." Id. at 199. Other cases have read the general scheme of section 101(a) more broadly, holding that it protects the right to "full and active participation" in union affairs. Blanchard v. Johnson, 388 F.Supp. 208, 213 (N.D. Ohio 1974), rev'd in part, 532 F.2d 1074 (6th Cir.), cert. denied, 429 U.S. 869, 97 S.Ct. 180, 50 L.Ed.2d 149 (1976); see also Sheldon v. O'Callaghan, supra, 497 F.2d at 1281. We have not yet determined the breadth of section 101(a)(2).
 
 
 22
 The sparse legislative history of LMRDA § 101(a)(2) clearly indicates that Congress intended to prevent union reprisals against members who chose to speak and organize in opposition to the union. See 105 Cong.Rec. 6476-77, 6725 (1959), reprinted in II NLRB, Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, at 1103, 1238 (1959); see generally, Rothman, Legislative History of the "Bill of Rights" for Union Members, 45 Minn.L.Rev. 199, 210-11 (1960). Nothing in that history, however, suggests that prevention of reprisals was the sole purpose of the provision. On the contrary, the broad language of the provision itself, which protects "the right to meet and assemble freely . . . to express any views, arguments, or opinions . . . ," 129 U.S.C. § 411(a)(2), suggests that Congress desired to protect the free speech of union dissenters from any inhibiting influence, not just that of direct reprisal. The thrust of the reprisal language in legislative debate and the language of section 101(a)(2) is the same: a union may not interfere with the expression of ideas or the association of individuals that may be inimical to the union. Section 101(a)(1) grants to all union members an equal voice in the democratic selection process, and "(s) ection 101(a)(2) carries the legal protection of dissent a step farther by guaranteeing union members freedom of speech both inside and outside union meetings, and also by securing the critics an opportunity to meet for the purpose of organizing their opposition." Cox, Internal Affairs of Labor Unions under the Labor Reform Act of 1959, 58 Mich.L.Rev. 819, 834 (1960). We agree with the Second Circuit that:
 
 
 23
 The LMRDA was enacted with the clear purpose of assuring "the full and active participation by the rank and file in the affairs of the union." American Federation of Musicians v. Wittstein, 379 U.S. 171, 182-183, (85 S.Ct. 300, 306-307, 13 L.Ed.2d 214) (1964). The Congress by passing a "Bill of Rights" for union members determined that the efficiency of a monolithic union under autocratic rule was gained at too great a price if it necessitated any sacrifice in the members' rights to determine the course of their organization. The balance was struck in favor of union democracy. Only a union responsive to the rights of all its members can achieve the ideals of responsibility, opportunity and self-determination that are recognized as fundamental values in the labor movement.
 
 
 24
 To effectuate that determination, the Bill of Rights was incorporated into the Act, guaranteeing each union member protection against infringement of his rights to vote, to meet, and to participate in discussions on matters of concern to him and his union.
 
 
 25
 Navarro v. Gannon, 385 F.2d 512, 518 (2d Cir. 1967), cert. denied, 390 U.S. 989, 88 S.Ct. 1184, 19 L.Ed.2d 1294 (1968). Therefore, we reject BRAC's narrow reading of section 101(a)(2).
 
 
 26
 Lodge alleges that access to the membership lists was essential to the success of its efforts to communicate with and generate support from individual union members, and that wrongful denial of the referendum denied its right of expression through vote. Applying the appropriate standard of review, we cannot say without doubt that Lodge can prove no facts that would state a claim under our broad reading of section 101(a)(2). See 1199 DC, Nat'l Union of Hosp. and Health Care Employees v. National Union of Hosp. and Health Care Employees, 533 F.2d 1205, 1209 (D.C. Cir. 1976). Interference with protected rights may well occur as effectively by denial of access to mailing lists or refusal to hold a referendum as by direct reprisal. The decision whether a violation of section 101(a)(2) actually occurred must be made initially in the district court based upon the evidence. We simply say that Lodge must be given the opportunity to present its case. As the Supreme Court has said:
 
 
 27
 When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.
 
 
 28
 Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Accordingly, we reverse the district court's dismissal of Lodge's section 101(a)(2) claim.
 
 V.
 
 29
 Lodge's third claim is that Dennis, by withholding the membership lists and denying the referendum, violated his fiduciary duties to the union as set forth in LMRDA § 501, 29 U.S.C. § 501(a).[10] That provision states that union officers "occupy positions of trust in relation to such organization and its members as a group." Id. The district court concluded that this cause "fails to state a claim for which relief can be granted" because Lodge did "not allege any actions on the part of (Dennis) which constitute a breach of . . . fiduciary duties under § 501." We disagree.
 
 
 30
 BRAC argued before us, and argued in the district court, that section 501 fiduciary duties are limited to financial transactions that Lodge stated no claim because it failed to allege that Dennis' wrongful conduct occurred in the handling of union money or property. See, e. g., Hood v. Journeyman Barbers Internat'l Union, 454 F.2d 1347, 1354 (7th Cir. 1972). Although the reach of section 501 was not decided in Kerr v. Shanks, 466 F.2d 1271, 1275 n.2 (9th Cir. 1972), cert. denied, 412 U.S. 918, 93 S.Ct. 2730, 37 L.Ed.2d 144 (1973), the case cited by both parties, we resolved the issue in Stelling v. IBEW Local 1547, supra, 587 F.2d at 1386.
 
 
 31
 The plaintiffs in Stelling made a claim essentially the same as Lodge's contention that Dennis denied a constitutionally required referendum vote. Having already determined that section 501 "establishes that union officials have fiduciary duties even when no monetary interest of the union is involved," id. at 1386, we held that "(t)he allegation that (defendants) have denied the membership of the union the constitutionally guaranteed right to vote is a sufficient assertion of breach of trust . . . to invoke the jurisdiction of § 501." Id. at 1387. On the basis of Stelling, we conclude that Lodge's allegation that Dennis wrongfully refused access to the membership lists and wrongfully denied the referendum vote does state a breach of fiduciary duty within LMRDA § 501. We therefore reverse the district court's dismissal of Lodge's third cause of action.[11]
 
 VI.
 
 32
 In summary, we conclude that this case is not moot. We affirm the dismissal of the first claim and that portion of the second claim dealing with LMRDA § 101(a)(1). We reverse dismissal of that portion of the second claim dealing with LMRDA § 101(a)(2) and dismissal of the third claim, and remand to the district court for further proceedings.
 
 
 33
 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
 
 
 
 *
 Honorable Robert C. Belloni, United States District Judge, District of Oregon, sitting by designation
 
 
 [1]
 Lodge requested that the court declare its rights under Article 33 and the violated statutes, enjoin BRAC from further interference with those rights, order that the membership lists be made available to Lodge, and order that the referendum be held
 
 
 [2]
 29 U.S.C. § 185(a) states:
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 
 
 [3]
 Federal Rule of Civil Procedure 12 provides in part:
 (b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted . . .. If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.
 
 
 [4]
 In his dispositive order, the district judge stated:
 Plaintiffs' second cause of action under (Section 101(a)) fails to state a claim for which relief can be granted. None of the rights guaranteed by that section are alleged by plaintiffs to have been violated, and none of the acts alleged to have been committed by the defendants come within the prohibitions inherent in the exercise of those rights. There is no allegation that defendants engaged in any discriminatory denial of plaintiffs' right to participate in union affairs or any infringement of plaintiffs' right to freedom of speech as guaranteed in this section.
 
 
 [5]
 This reason was stated in conjunction with the district court's dismissal of the LMRDA § 101(a) claim, the very claim BRAC attacks by its argument that the court rendered summary judgment. See note 4 supra
 
 
 [6]
 If the district court did render summary judgment as BRAC contends, we would still be required to reverse the dismissal because the district court gave Lodge no opportunity to submit counter affidavits. Winfrey v. Brewer, 570 F.2d 761, 764 (8th Cir. 1978); Costen v. Pauline's Sportswear, Inc., 391 F.2d 81, 85 & n.5 (9th Cir. 1968)
 
 
 [7]
 In the district court and before us, Lodge has argued the equal vote provision of LMRDA § 101(a)(1) and the free speech provision of LMRDA § 101(a) (2) as though they were the same provision, protective of the same interest. We choose to treat them separately not only because they are separate provisions, protective of distinct interests, but also because the discrimination showing required by Calhoon v. Harvey, 379 U.S. 134, 139, 85 S.Ct. 292, 295, 13 L.Ed.2d 190 (1964), and followed by this circuit, applies only to LMRDA § 101(a)(1). Id. at 138, 85 S.Ct. at 295
 
 
 [8]
 The complete text of 29 U.S.C. § 411(a)(1) provides:
 Equal rights. Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.
 
 
 [9]
 The full text of 29 U.S.C. § 411(a)(2) provides:
 Freedom of speech and assembly. Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.
 
 
 [10]
 The full text of 29 U.S.C. § 501(a) provides:
 The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and by-laws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit(s) received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and by-laws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.
 
 
 [11]
 BRAC contends that the district court dismissal should be affirmed because Lodge failed to perfect service of process upon Dennis, as stated by the district court in its initial dismissal order. Following that order, however, Lodge requested a 30-day period in which to obtain proper service upon Dennis. That request was denied "(w)ithout reaching the merits" because even if Dennis was properly served, the complaint failed to state a cause of action against him. Our conclusion that the complaint does state a claim makes it necessary for the district court to consider the merits of Lodge's request for a period in which to perfect service of process. Therefore, it is inappropriate for us to reach the question of proper service at this time