**William J. CAROTHERS, et al., Plaintiffs,**

**v.**

**Jackie PRESSER, et al., Defendants.**

**Civ. A. No. 85–2645.**

United States District Court, District of Columbia.

June 12, 1986.

Paul Alan Levy, Washington, D.C., for plaintiffs.

Paul Lefkowitz, Cleveland, Ohio, pro hac vice, for defendant Jackie Presser.

Gary Witlen, Washington, D.C., for defendant International Broth. of Teamsters.

## MEMORANDUM

GASCH, District Judge.

## I. INTRODUCTION

This case is before the Court on the parties' cross-motions for summary judgment. Plaintiff truck drivers are members of defendant International Brotherhood of Teamsters. They are also members of a group of dissidents within the union known as Teamsters for a Democratic Union, or "TDU". They have sued under the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411, for the right to use defendant union's mailing list, at plaintiffs' expense, to disseminate their views concerning the wisdom of ratifying a proposed contract. The Court's jurisdiction is established in 29 U.S.C. § 412, giving it broad powers to fashion appropriate relief to protect union members' rights under Section 411.

### A. *The Facts*

Plaintiffs are three of 23,000 members of defendant International Brotherhood of Teamsters ("IBT") who are known as "carhaulers," because they drive trucks that deliver new automobiles and other vehicles. The IBT national negotiating committee, chaired by defendant Jackie Presser, the president of the IBT, negotiates a contract for the carhaulers every three years. This collective bargaining pact is referred to as the National Automobile Transporters

Agreement, or "NATA". NATA governs relations between 100 locals and 39 employers. The industry-wide contract has several components: a master agreement that sets wages and conditions nationwide, and supplemental agreements that set varying terms by region or by job classification within the carhaulers' union. Prior to a contract vote, the union typically distributes to each member a copy of the proposed national pact and only the supplemental agreement applicable to him. However, under the IBT Constitution, Article XVI, § 4, and by court ruling, both the national contract and all the supplementals must be submitted for nationwide ratification. Thus, supplemental agreements that affect only one region must be approved by the entire membership. *Davey v. Fitzsimmons*, 413 F.Supp. 670 (D.D.C. 1976). Theoretically, therefore, a supplemental agreement that affected only carhaulers in the southeast but approved by the majority of carhaulers in all other regions, could be ratified even though the majority of the carhaulers in the southeast opposed it.

On May 31, 1985, the most recent carhaulers contract expired, and shortly thereafter, a new collective bargaining agreement was submitted to the members for ratification. The ballot letter contained a notice from the negotiating committee urging ratification, but the proposal was rejected. A strike followed, beginning on July 26, 1985, that stopped deliveries to auto dealers for several weeks. Additional negotiations followed, and a second proposed contract was submitted to the members. This ballot packet did not contain any letter from the leadership urging ratification. It simply included the proposed contract, with the changes negotiated since the strike printed in red. This contract was ratified 8,792 to 6,808. It is in effect until May 31, 1988.

Between the time the first proposal was voted down and the second proposal was negotiated, plaintiffs asked defendants to give them access to a mailing list of members so that plaintiffs could inform the members of their opposition to the second proposal, if they were unhappy with it. Plaintiffs are members of the Carhaul Coordinating Committee, a subsection of the TDU.[1] The Committee did not have the names and addresses of all 23,000 carhaulers, but sought at its own expense to obtain the use of the IBT's computerized list of members. This would be accomplished by submitting the TDU materials to a mailing service of defendants' choice. Therefore, the mailing list need never leave control of defendants.

Defendants, however, declined to provide the list. They informed the TDU members the union was not legally obligated to do so, because the second ballot packet would not contain any letter from the union leadership urging ratification. As a result, just a few days before the second ballot packets were to be posted, plaintiffs filed suit in this Court seeking a temporary restraining order preventing the ballots from being mailed until access to the mailing list was provided. Judge Oberdorfer, sitting as motions judge, denied the TRO, in part because he feared irreparable harm would result from a delayed vote, which would exacerbate the economic injury to the auto industry. *Carothers, et al. v. Presser, et al.*, Order, No. 85–2645 (August 21, 1985) ("Order"). Thus the voting commenced and the contract was ratified.

B.  *The Issues*

Plaintiffs subsequently filed an amended complaint seeking permanent relief. First, they ask the Court to declare that defendants violated 29 U.S.C. §§ 411(a)(1) and (2) by denying plaintiffs the opportunity to mail, at plaintiffs' own expense, their views

---

1. The TDU has some 8,000 members throughout the 2,000,000 members of the Teamsters, not just within the carhaulers. They are a "national organization of rank and file Teamsters working not only in carhauling, but in general freight, United Parcel Service, grocery, food processing, manufacturing, public sector and the like. TDU members seek to reform and democratize the union and make it more responsive to their needs in collective bargaining." Plaintiffs' Motion for Summary Judgment, pp. 3–4.

to union members eligible to vote on the latest contract. Second, plaintiffs ask the Court to issue an injunction that would require defendants, in future votes, to permit plaintiffs and other union members to use the mailing list at their own expense, to disseminate their views to the membership, either by mailing the information with the ballots or in a separate, timely mailing. Section 411(a)(1) assures union members of an equal vote on all union issues put to the membership. Section 411(a)(2) guarantees union members free speech rights with regard to union affairs.

Defendants move to dismiss on the theory that the complaint regarding the 1985 election is moot, or in the alternative, they ask for summary judgment on the theory that these sections of LMRDA do not create the right plaintiffs seek to enforce. Specifically, they argue plaintiffs must demonstrate unequal treatment to make out a violation of Section 411(a)(1), and that the free speech rights guaranteed by Section 411(a)(2) are triggered only if the union has penalized a member for speaking his mind. For the reasons stated below, the Court determines the case is not moot, and will enter summary judgment for plaintiffs.

## II. MOOTNESS

Defendant IBT argues this Court lacks jurisdiction because the case has been mooted by the 1985 ratification vote, which precludes the possibility of this dispute arising again between these parties. An active case or controversy must continue to exist between the parties during all phases of the proceeding, or the case may not be heard. *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979).

However, a case is not moot where the dispute is "capable of repetition yet evading review." *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975). In such a situation, a case will not be deemed moot when the challenged action was too short in duration to be fully litigated, and there is a "reasonable expec-

tation" that a similar controversy will arise between the same parties, raising similar questions of law. *Id.; Gannett Co. v. de Pasquale*, 443 U.S. 368, 377, 99 S.Ct. 2898, 2904, 61 L.Ed.2d 608 (1979).

Defendants argue that it is not reasonable to expect a similar controversy to arise, as it is not known whether plaintiffs would oppose a proposed contract in the future or whether they would wish to circulate information concerning that proposal. This argument is misplaced in election cases, where the doctrine of taking jurisdiction when the case is "capable of repetition yet evading review" has greater force, because elections are conducted on short timetables. *E.g., Democratic Party v. Wisconsin*, 450 U.S. 107, 115 n. 13, 101 S.Ct. 1010, 1015 n. 13, 67 L.Ed.2d 82 (1981); *Storer v. Brown*, 415 U.S. 724, 737 n. 8, 94 S.Ct. 1274, 1282 n. 8, 39 L.Ed.2d 714 (1974). This is especially so in the case of a union election, where the issue is unlikely to be resolved in a motion for a temporary restraining order, because of the likelihood that economic harm would accompany a delay in voting. *See, e.g.,* Order, *supra.*

Defendant IBT relies on *Bauman v. Presser*, in which union dissidents challenged a surprise, mid-term contract ratification vote. 117 LRRM 2393 (D.D.C. 1984). Judge Bryant enjoined the union from continuing balloting that was already underway, and ordered it to conduct a new vote. By the time the case was appealed, the second vote had been tabulated and a new contract was in force. The Court of Appeals declared the case moot and vacated Judge Bryant's opinion. *Bauman v. Presser*, C.A. No. 84–02699 (D.C.Cir. Jan. 23, 1985) (IBT Exh. 9). The appeals court stated in an unpublished opinion that the case was moot because "there is no reasonable expectation or demonstrated probability that the same controversy will recur involving the same complaining party.... It is apparent from the district court's memorandum ... that the action enjoined constituted a departure from established norms; the claim that such departures will recur is mere speculation." *Id.*

■ However, the present case may be distinguished on several grounds. In *Bauman,* an injunction actually issued. An appeal from a preliminary injunction that has been fully carried out is moot. *University of Texas v. Camenisch,* 451 U.S. 390, 398, 101 S.Ct. 1830, 1835, 68 L.Ed.2d 175 (1981). Here, however, no injunction was granted. More significantly, the present case is based on a set of facts that do not constitute "a departure from established norms." Rather, the complaint challenges routine IBT voting procedures that are likely to be in place during the next contract ratification process. Plaintiffs have opposed every carhauler contract proposed since 1979, which makes it reasonable to predict they will do so in the future.[2] The Court therefore concludes the controversy is reasonably likely to recur, and the case is not moot.

## III. THE LMRDA ISSUES

### A. *The Statute*

■ Plaintiffs rely on Title I of the LMRDA, encaptioned "Bill of Rights of Members of Labor Organizations". 29 U.S.C. § 411. Specifically, they assert their right to use of the mailing list is based on Sections 101(a)(1–2) of that Title, codified at 29 U.S.C. §§ 411(a)(1–2), which state:

(1) **Equal rights.** Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

(2) **Freedom of speech and assembly.** Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

"The Act's overriding objective was to ensure that unions would be democratically governed and responsive to the will of the union membership as expressed in open, periodic elections." *Finnegan v. Leu,* 456 U.S. 431, 441, 102 S.Ct. 1867, 1873, 72 L.Ed.2d 239 (1982) (citations omitted). Title I was passed in response to testimony at congressional hearings concerning abuses and intimidation within unions, specifically within the Teamsters, that individual members had been expelled from the union, thereby losing their jobs in some cases, for speaking out against union leadership. *Id.* at 435–36, 102 S.Ct. at 1870; *see, e.g.,* Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, Titles I–IV 242–45 (remarks of Sen. McClellan) (Dept. of Labor ed.).

Underlying the LMRDA is the "broad notion that unions should be democratized." *Dolan v. Transportation Workers Union,* 746 F.2d 733 (11th Cir.1984) Titles II–IV provide detailed provisions for the conduct of union affairs, to be overseen by the Secretary of Labor. Title I, however, is a generalized assertion of union members' rights, providing in Section 102 for enforcement of these rights by the federal courts. 29 U.S.C. § 412. Because the bill was offered as a floor amendment and is couched in generalized language, courts

---

**2.** Furthermore, the *Bauman* order was not published and therefore cannot have precedential value. Circuit Rule 8(f).

and the bill's authors have cautioned against reading the language too narrowly or placing too much emphasis on the wording or construction of the statute to discern specific rights. *Furniture Moving Drivers v. Crowley*, 467 U.S. 526, 541–42, 104 S.Ct. 2557, 2566, 81 L.Ed.2d 457 (1984); *Mallick v. International Brotherhood of Electrical Workers*, 749 F.2d 771, 776 (D.C. Cir.1984); *Knox county Local, etc. v. National Rural Letter Carriers' Assn.*, 720 F.2d 936, 938 (6th Cir.1984). *See Steelworkers v. Sadlowski*, 457 U.S. 102, 111, 102 S.Ct. 2339, 2345, 72 L.Ed.2d 707 (1982); *Hall v. Cole*, 412 U.S. 1, 11, 93 S.Ct. 1943, 1949, 36 L.Ed.2d 702 (1973).

> Title I litigation necessarily demands that remedies "be tailored to fit facts and circumstances admitting of almost infinite variety," and § 102 [29 U.S.C. § 412] was therefore cast as a broad mandate to the courts to fashion "appropriate" relief. Indeed, any attempt on the part of Congress to spell out all of the remedies available under § 102 would create the "danger that those [remedies] not listed might be proscribed with the result that the courts would be fettered in their efforts to 'grant relief according to the necessities of the case'."

*Hall v. Cole, supra*, 412 U.S. at 11, 93 S.Ct. at 1949 (citing *Gartner v. Soloner*, 384 F.2d 348, 353 (3rd Cir.1967) (footnotes omitted)). Thus, it has been left to the courts to determine on a case-by-case basis what specific rights and remedies are guaranteed by Section 411.

#### B. *Discussion*

■ The Supreme Court has had several opportunities to construe the provisions at issue here. In *Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), the Court, focusing on Section 411(a)(1)'s requirement that every member of a labor union shall have equal rights to nominate and vote, stated: "Plainly, this is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote." *Id.* at 139, 85 S.Ct. at 295.

The Supreme Court construed Section 411(a)(2)'s guarantee of free speech rights in the case of *Steelworkers v. Sadlowski*, 457 U.S. 102, 102 S.Ct. 2339, 72 L.Ed.2d 707 (1982). There, a candidate for union office challenged a union rule barring campaign contributions from outsiders. Relying on first amendment law, he argued this limited his freedom of expression. The Supreme Court held Section 411(a)(2)'s free speech guarantee was not coextensive with the first amendment of the Constitution, and in light of the statute's proviso covering reasonable rules, the restriction on outside contributions did not violate Section 411(a)(2). Of significance to the case at bar, the Supreme Court added that the legislative history "reveals that Congress modeled Title I after the Bill of Rights, and that the legislators intended § 101(a)(2) [411(a)(2)] to restate a principal First Amendment value—*the right to speak one's mind without fear of reprisal." Id.* at 111, 102 S.Ct. at 2345 (emphasis added).

Defendants' motion to dismiss is based largely on these two cases. They argue that in order for there to be a violation of Section 411(a)(1), *Calhoon* requires plaintiffs to allege unequal treatment; in order for there to be a violation of plaintiffs' free speech rights under Section 411(a)(2), defendants assert, *Sadlowski* requires some evidence of reprisal against plaintiffs for speaking their minds. Because the union did not include any letter urging ratification of the second proposed contract, defendants reason, there was no discrimination involved in preventing plaintiffs from mailing information opposing the contract. It is further undisputed that there is no allegation of reprisal in the present case.

However, this circuit's court of appeals, as well as others, have refused to read *Calhoon* and *Sadlowski* so narrowly. *See Mallick, supra*, 749 F.2d at 786 ("This circuit has refused to take an unreasonably narrow view of the right to an equal vote."); *Bunz v. Moving Picture Machine Operators, etc.*, 567 F.2d 1117, 1121 (D.C. Cir.1977); *McGinnis v. Local Union 710, International Brotherhood of Teamsters*,

774 F.2d 196, 200 (7th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1638, 90 L.Ed.2d 184 (1986); *Christopher v. Safeway Stores, Inc.*, 644 F.2d 467, 479 (5th Cir.1981). Noting that *Calhoon* was really a case involving a federal court's jurisdiction over Title IV claims, and noting that there is nothing in *Calhoon* defining the kind of discrimination required before a violation of Section 411(a)(1) is made out, these courts have read that section's guarantee as requiring that a union give each member an equal *and meaningful* vote.[3] *McGinnis, supra,* 774 F.2d at 199. "[A] union cannot immunize itself against charges of discrimination simply by affording each member the 'mere naked right to cast a ballot;' the right each member has to vote must be 'meaningful'." *Bunz, supra,* 567 F.2d at 1121. Other courts have found Section 411(a)(1) requires, in addition to an equal opportunity to vote, that union members be provided a "meaningful", "reasoned and informed vote". *Blanchard v. Johnson,* 532 F.2d 1074, 1078–79 (6th Cir.), *cert. denied sub nom. Marine Engineers Beneficial Assn. v. Johnson,* 429 U.S. 834, 97 S.Ct. 100, 50 L.Ed.2d 100 (1976).[4]

As to a union member's free speech rights under Section 411(a)(2), reprisal is not always required before a violation may be found. The reference to reprisal in *Sadlowski* was dictum, and was not an express limitation on the rights under the statute. Nothing in the legislative history of the free speech guarantee

> suggests that prevention of reprisal was the sole purpose of the provision. On the contrary, the broad language of the provision itself, which protects 'the right to meet and assemble freely ... to ex-

press any views, arguments, or opinions ...,' 29 U.S.C. § 411(a)(2), suggests that Congress desired to protect the free speech of union dissenters from any inhibiting influence, not just that of direct reprisal.

*Dennis, supra,* 625 F.2d at 827. In *Sadlowski* itself, the Supreme Court cautioned that the language in Section 411(a)(2) granting union members the right to "meet and assemble freely" should not be narrowly construed, but rather that language should "be given a flexible interpretation." *Sadlowski, supra,* 457 U.S. at 111 n. 4, 102 S.Ct. at 2345 n. 4. Thus, plaintiffs are not required to show they have been subjected to reprisal or intimidation because of their opposition to the proposed contract.

■ Rather, the issues of whether plaintiffs have been denied a reasonable, informed, meaningful vote under Section 411(a)(1), and whether the union's refusal to permit access to the mailing list unreasonably inhibits plaintiffs' ability to communicate with other members, in violation of Section 411(a)(2), are questions of fact. *See, Dennis, supra,* 625 F.2d at 828; *Blanchard, supra,* 532 F.2d at 1079; *Knox County Local, supra,* 720 F.2d at 941; *Murphy v. International Union of Operating Engineers, Local 18,* 774 F.2d 114, 131–32 (6th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1201, 89 L.Ed.2d 315 (1986); *Sheldon v. O'Callaghan,* 497 F.2d 1276, 1282 (2d Cir.), *cert. denied,* 419 U.S. 1090, 95 S.Ct. 681, 42 L.Ed.2d 682 (1974); *Gilliam, et al. v. Independent Steelworkers Union,* 572 F.Supp. 168, 171–72 (D.W.Va. 1983).

■ Significant factors to be considered are the structure of the vote (*e.g.,* whether

---

**3.** *Crowley, supra,* 467 U.S. at 548, 104 S.Ct. at 2569, may be distinguished on the same grounds as *Calhoon.* There, the Supreme Court restated its holding in *Calhoon* that Section 411(a)(1) "only protects union members against the discriminatory application of union rules." In *Crowley,* as in *Calhoon,* the issue was the allocation of jurisdiction between the federal courts and the Secretary of Labor when procedures for election of union officers were challenged under Title I and Title IV. The court's repetition of the *Calhoon* language does nothing to answer the issue of what kind of discrimination must be shown under Section 411(a)(1).

**4.** *But see Lodge 1380, Brotherhood of Railway, Airline and Steamship Clerks v. Dennis,* 625 F.2d 819, 826 (9th Cir.1980) (hereinafter "*Dennis*"); *Nienaber v. Ohio Valley Carpenters District Council,* 652 F.2d 1284, 1286 (6th Cir.1981) (both holding specific discrimination required to make out a violation of § 411(a)(1)).

the nationwide membership approves contracts for autonomous units); *Sheldon, supra,* 497 F.2d at 1282; whether other groups are given access to union media outlets, *Knox County, supra,* 720 F.2d at 941; and whether the union's limits on communications or voting are reasonably related to a legitimate union concern. *Sadlowski, supra,* 457 U.S. at 111, 102 S.Ct. at 2345).

■ The Supreme Court outlined the proper mode of analysis in *Sadlowski:* "To determine whether a union rule is valid under the statute, we first consider whether the rule interferes with an interest protected by [§ 411(a)]. If it does, we then determine whether the rule is 'reasonable' and thus sheltered by the proviso" that the union may make reasonable rules to govern its affairs. *Id.*

A number of courts have recognized that a right similar to the one sought here—access to a membership mailing list—exists under either Section 411(a)(1) or (2). In *Sheldon, supra,* 497 F.2d 1276, the second circuit found union dissidents were entitled to precisely the same relief as requested here: the right to have the union mailing list made available to a mailing service chosen by the union, so that the dissidents, at their own expense, could disseminate their views to the membership concerning a referendum. This relief was necessary because the union consisted of hard-to-reach seagoing members, and, significantly for the case at bar, because the union consisted of largely autonomous locals, but the voting was nationwide. *Id.* at 1282–83. The narrowly-tailored relief, permitting the union to maintain the mailing list's confidentiality, removed any reasonable objection the union might make. *Id.*

The sixth circuit in *Blanchard, supra,* upheld a district court order providing, *inter alia,* that any member shall be permitted to mail his views to other members using the union mailing list. 532 F.2d at 1078. The court noted the LMRDA required dissemination of sufficient informa-

tion to allow "a reasoned and informed vote" on an affiliation referendum. *Id.* at 1079. As in *Sheldon,* many of the union members were seagoing, making it difficult to hold meetings to spread news. *Id.* at 1076. In *Dennis, supra,* 625 F.2d 819, the ninth circuit held that Section 411(a)(2), guaranteeing free speech rights, could support a claim by union dissidents seeking access to a union mailing list.[5] In this circuit, the issue of rights to a union mailing list has never been squarely faced, but the court of appeals has cited with approval the *Sheldon* and *Blanchard* opinions recognizing such a right under Section 411(a)(1). *Bunz, supra,* 567 F.2d at 1121.

Defendants here would distinguish the above cases where courts ordered access to union mailing lists, because none of them involved contract ratifications, but rather, dealt with referendums on union constitutions or affiliation votes. This distinction is not supported by the statute, which under Section 411(a)(1) guarantees equal rights to vote in elections or referendums, and to participate in the voting upon the business of membership meetings. Section 411(a)(2) guarantees the right to meet and assemble freely and to express "any views, arguments or opinions; ...." These provisions do not distinguish between the subject matter of union votes, and in light of repeated admonitions to construe the statute broadly, *see Crowley, supra,* 467 U.S. at 542, 104 S.Ct. at 2566, there is no basis for excluding contract ratification procedures from the protection of Section 411(a).

The parties also debate the relevance of *Knox County, supra,* 720 F.2d 936. There, members of a union local wanted to buy a full-page advertisement in a national union publication to express their opposition to a proposed contract. The sixth circuit held that Section 411(a)(2) entitled them to do so where the national union sold ad space to all other comers, and where the magazine had been used to advocate support for the contract. *Id.* at 941. Defendants rely on this fact to argue that they do

---

**5.** The court found such a right did not exist under Section 411(a)(1), however, because that circuit reads the equal voting rights section narrowly as requiring a showing of discrimination.

not have to aid in the dissemination of plaintiffs' opposition to the contract where the union did not include any letter in the ballots urging ratification. However, the *Knox County* court stated that as the national magazine was the local's only source of access to the national membership, it was the "only reasonable avenue for effective communication of opposition to the new agreement," and the union was required to sell the ad space to the dissidents. *Id.* This supports plaintiffs' contention that as members of disparate locals, access to the mailing list is the only reasonable method for them to reach the national membership.

Defendants offer additional objections to granting plaintiffs the relief they seek here. First, they argue that Congress did not intend access to union mailing lists to be included among the rights enumerated under Title I of the LMRDA. They reach this conclusion based on the fact that such a right is specifically granted under Title IV of the Act, providing detailed rules concerning the conduct of elections for union officers. *See* 29 U.S.C. § 481(c). Because Congress included this right under LMRDA Title IV, defendants argue, Congress must have intentionally omitted it from Title I. This very argument has been expressly rejected by the Supreme Court in *Hall v. Cole, supra,* 412 U.S. at 10–11, 93 S.Ct. at 1948–49. *See supra,* part II(A).

Second, defendants argue that their refusal to permit access to a mailing list is a reasonable restriction on plaintiffs' free speech rights, as permitted in the proviso attached to Section 411(a)(2). If forced to grant plaintiffs this right, the union argues, it would have to grant access to the mailing list to anyone who requests it. The short and simple answer to this objection is that full participation in union affairs by the rank and file is precisely what Title I envisions. *Crowley, supra,* 467 U.S. at 537, 104 S.Ct. at 2563; *Finnegan, supra,* 456 U.S. at 441, 102 S.Ct. at 1873. Furthermore, the union may, under both Sections 411(a)(1) and (2), make reasonable rules concerning the schedule for filing materials to be mailed so that the mailings do not cause undue delay in voting.

Defendant Presser objects that union officials have an obligation under the LMRDA to act responsibly and communicate accurate information to the membership, a duty not shared by individual members. *See, e.g., Newman v. Local 1101, Communications Workers of America,* 570 F.2d 439, 445 (2d Cir.1978). Defendant Presser seems to argue that this duty extends to preventing individual members from circulating misleading information about a contract proposal. However, union officers also have a duty under Section 411(a)(2) not to suppress communication between the members, and a duty under Section 411(a)(1) to encourage full, fair and informed participation in union votes. That some of the information mailed may be inaccurate or misleading is no more relevant than if a member stood up at a local meeting and made a false statement about a proposed contract. Under its authority to make reasonable rules, the union may require the mailing to be clearly identified as to the source, so there would be no confusion as to who prepared the material.

Finally, as a practical matter, the "Pandora's Box" defendants fear would be opened by granting the relief plaintiffs seek would likely be a small one, in that any other members who desire to make a mailing must pay their own expenses, thus limiting the numbers who in reality will take advantage of this right.

## IV. CONCLUSION

Under the law of this circuit, union members' rights under Section 411(a) are to be read broadly. *Mallick, supra,* 749 F.2d at 786. Section 411(a)(1) guarantees each member a right to an equal and meaningful vote. *Bunz, supra,* 567 F.2d at 1121. As a practical matter, any proposed contract is viewed as having the approval of those who negotiated it, whether management or union leadership. Simply because the union chooses not to include an express endorsement of the contract does not preclude a finding that those who op-

pose it are discriminated against in a broad sense if they are prevented from disseminating their views in an effective manner.[6] The issue of whether union members were deprived of an adequate opportunity to become reasonably informed on the issues is properly analyzed under Section 411(a)(1). *Bauman, supra,* 117 LRRM at 2400 n. 35. Where, as here, the national membership is asked to approve supplementals affecting other regions, members of one region are deprived of an adequate opportunity to become reasonably informed on the issues before them if they cannot effectively communicate with members in another region. Certainly those affected by each supplemental pact are discriminated against if they do not have the mechanism for communicating with those who must approve the terms under which they work.

Section 411(a)(2), protecting a union member's free speech rights, is also to be given flexible application, *Sadlowski, supra,* 457 U.S. at 111 n. 4, 102 S.Ct. at 2345 n. 4, and encompasses the right to communicate effectively with other members concerning a vote put to the national membership. *Murphy, supra,* 774 F.2d at 131–32; *Knox County, supra,* 720 F.2d at 941; *Dennis, supra,* 625 F.2d at 827. The "LMRDA requires the union to give dissidents some means of reaching union members with their views...." *Murphy, supra,* 774 F.2d at 131–32.

Due to the requirement that the national membership of the carhaulers approve supplemental contracts that affect only one region or job classification, it is essential that locals have the ability to communicate with one another concerning the impact of a proposed supplemental contract. Attendance at local membership meetings alone would not provide the inter-local communication necessary for a fully informed vote. In such a case, access to the union's national mailing list may be required to insure effective communication as guaranteed by Section 411(a)(2) and a meaningful vote un-

der Section 411(a)(1). *See Dennis, supra,* 625 F.2d at 828; *Blanchard, supra,* 532 F.2d at 1078; *Sheldon, supra,* 497 F.2d at 1282.

Having determined that the right of access to the mailing list may be found under Section 411(a), the court must nonetheless determine whether the union's refusal to provide access is a reasonable rule. *Sadlowski, supra,* 457 U.S. at 111, 102 S.Ct. at 2345. Because of the narrowly tailored relief to be granted, the Court determines the union's refusal is unreasonable. The confidentiality of the mailing list would be protected by having the union submit the list to the mailing service of its choice. *Sheldon, supra,* 497 F.2d at 1282. By requiring only that the union provide the list for timely mailings to be paid for by the dissidents, and not requiring that the union actually include the dissidents' material in union mailings, union officials need not fear that the official ballots would be delayed or overburdened, or that they might be seen as sponsoring positions that are inimical to their duties as union officers.

In light of the foregoing, the Court will grant plaintiffs' motion for summary judgment, and enter a limited order to the effect that defendants must make available the national union membership mailing list, by having plaintiffs submit their materials to a mailing service acceptable to defendants. Such a mailing should take place shortly before or contemporaneously with the mailing of any contract ratification ballots. Defendants will not be required, however, to include plaintiffs' materials in any ballot packet, and plaintiffs will be required to pay all expenses connected with the mailing of their materials.

### ORDER

Upon consideration of defendants' motions to dismiss and the parties' cross-motions for summary judgment, opposition thereto, written submissions by the parties,

---

6. Furthermore, the rule defendants contend for, namely that they may deny access to communication links if the union leadership expresses no

opinion as to a proposed contract, would only encourage silence where the LMRDA seeks to encourage a full airing of the issues.

oral argument in open Court and for the reasons stated in the accompanying memorandum, it is by the Court this 11th day of June, 1986,

ORDERED that the motion by defendant International Brotherhood of Teamsters to dismiss this case as moot be, and hereby is, denied; and it is further

ORDERED that defendants' motions for summary judgment be, and hereby are, denied; and it is further

ORDERED that plaintiffs' motion for summary judgment be, and hereby is, granted, and that the Clerk shall enter judgment for plaintiffs as follows:

1. The Court declares that defendants violated 29 U.S.C. §§ 411(a)(1) and 411(a)(2) by denying plaintiffs' request to have a mailing service send, at their own expense, to all or part of the membership eligible to vote on the proposed National Automobile Transporters' Agreement, a statement of their views in opposition to the proposal.

2. The Court declares that, when defendants mail to the affected union members the ballots for ratification of a proposed collective bargaining agreement which they have negotiated, members opposed to the proposal are entitled under 29 U.S.C. §§ 411(a)(1) and 411(a)(2) to have materials expressing their views mailed before the ballots are mailed, or contemporaneously therewith, to all or a portion of the membership to whom the ballots are mailed, subject to the following conditions:

a) The mailing is done by a mailing service agreed upon by the parties that will protect the security of the mailing list;

b) The mailing is done at the members' own expense;

c) The mailing by members is separate from the ballots and is clearly marked to distinguish it from official union mailings;

d) Materials are submitted in a timely fashion so that the mailing does not delay the vote beyond a reasonable time period; and

e) Defendants may adopt, publish in their constitution and enforce in a nondiscriminatory fashion, any other reasonable rules governing the time and manner of requesting such mailings.